MOON BROTHERS, INC., *v.* MOON.

1. TRADE MARKS AND TRADE NAMES—USE OF OWN FAMILY NAME.
   One has a right to use his family name as a part of his business name even though others with the same name also conduct a business with such name as a part of their business name.

2. SAME—WORDS DESCRIPTIVE OF BUSINESS.
   Words descriptive of the class of business in which the user of them is engaged may be adopted by competitors.

3. SAME—COMPETITORS WITH SAME FAMILY NAME.
   In the absence of statute prohibiting the doing of business under names assumed by unrelated competitors, each with the same family name and consisting of a set of brothers, whether or not defendants might also use the term ''Brothers'' or its abbreviation in connection with their business name must be determined under the rules of unfair business competition.

4. SAME—UNFAIR COMPETITION—RELIEF.
   Each case of unfair competition is determined upon its own facts, and relief is based upon principles of common business integrity.

5. SAME—UNFAIR COMPETITION—DEFINITION.
   Unfair competition ordinarily consists in the simulation by one person, for the purpose of deceiving the public, of the name, symbols, or devices employed by a business rival, or the substitution of the goods or wares of one person for those of another, thus falsely inducing the purchase of his wares and thereby obtaining for himself the benefits properly belonging to his competitor.

6. SAME—USE OF FAMILY NAME—DECEPTION OF PUBLIC—DAMAGE TO COMPETITOR.
   Generally speaking, one has the right to use his own name in his business, but he may not use it in such a way as to lead the public to believe that they are dealing with another, or that his wares are the wares of another, or that his establishment is the establishment of another, thereby bringing him-

self profit not properly appertaining to himself and his business, and thus inflicting damage on his competitor.

7. SAME—UNFAIR BUSINESS COMPETITION—EVIDENCE.

In suit by corporation named ''Moon Brothers, Incorporated,'' conducted by three brothers and their sister, engaged principally in the business of dealing in electrical appliances in same city as defendant brothers who conducted businesses of furniture and upholstering under assumed names in which the same family surname was followed by the term ''Brothers'' and a word descriptive of their respective businesses, evidence of unfair business competition *held*, insufficient to justify injunctive relief against defendants' use of ''Moon Brothers'' when used as a part of the business name nor to justify enjoining defendant from dealing in electrical appliances.

8. SAME—SIMILAR FAMILY NAMES—BROTHERS—ADVERTISING.

In suit by corporation engaged in electrical appliance business, owned by three brothers and a sister, and conducted in a large city under the name ''Moon Brothers, Incorporated,'' against defendant brothers, bearing same family name as plaintiff's owners but unrelated to them, and conducting furniture and upholstering business in same city under names ''Moon Brothers Furniture'' and ''Moon Brothers Upholstering,'' defendants are required to use all three words in their advertising in one line and of the same size of type.

Appeal from Wayne; Callender (Sherman D.), J. Submitted October 23, 1941. (Docket No. 99, Calendar No. 40,648.) Decided January 5, 1942.

Bill by Moon Brothers, Incorporated, a Michigan corporation, against Walter K. Moon and John C. Moon to restrain the use of certain names as trade names. From decree for plaintiff granting but part of relief sought, it appeals. Affirmed.

*Belanger, Wood, Jacquemain & Werner,* for plaintiff.

*Jorgensen & Alexander,* for defendants.

Starr, J. On June 9, 1939, Moon Brothers, Incorporated, a Michigan corporation, filed bill of complaint seeking permanently to restrain defendants, Walter K. Moon and John C. Moon, from using the names "Moon Brothers," "Moon Brothers Furniture," "Moon Brothers Upholstering," and "Moon Bedding Company." Plaintiff did not ask money damages but only injunctive relief against defendants' use of such names. However, from the record and statement of questions involved, it appears there is no dispute as to the name "Moon Bedding Company." We understand there is no blood relation between the persons named "Moon" connected with plaintiff company and the defendants.

Plaintiff alleged, in part, as follows:

"Your plaintiff shows that almost daily since the fall of 1938 your plaintiff has been put to considerable trouble, annoyance, expense, uncertainty, and confusion on account of the similarity of the several names used by the defendants with that of plaintiff, which had arisen in a variety of different ways, to-wit:

"(a) Defendants had men soliciting for furniture and upholstering business, who either purposely or through mistake or inadvertence, stated they were from Moon Brothers.

"(b) One George Finzer, an employee of defendants, applied for a loan with the Morris Industrial Bank stating he worked for Moon Brothers, and said bank called plaintiff, causing much confusion and trouble.

"(c) Plaintiff has received countless letters for defendants and especially correspondence from Jorgensen & Alexander, attorneys, in Detroit Bank Building.

"(d) Plaintiff has received calls from department of internal revenue regarding defendants' income tax.

"(e) In March, 1939, a Mrs. Clift called stating she did not want to do business with them after a canvasser of defendants had called on her representing he was from Moon Brothers.

"(f) Plaintiffs have received calls about a shooting escapade which a partner of Moon Brothers was involved in, which turned out to be defendants' affair.

"(g) Plaintiffs have received many other calls, too numerous to mention, regarding various affairs of business of defendants, and have been advised that defendants sent out letters with the heading of 'Moon Brothers.'"

Defendants filed answer generally denying plaintiff's charges of unfair business competition and plaintiff's right to the relief sought.

In March, 1919, Walter Moon, Carl Moon, Lloyd Moon, and Mrs. Grace Leonard, brothers and sister, organized a corporation under the name of Moon Music Company. When such company began handling electrical appliances in 1920, the name was changed to Moon Brothers, Incorporated, the plaintiff in this case. Plaintiff's business, apparently quite successful, was conducted principally within the area of the city of Detroit. Plaintiff's president, Walter Moon, testified:

"Our principal business is electrical appliances, gas ranges, radios, refrigerators, stoves, washing machines and ironing machines, and similar articles. At one time we handled pianos and organs, but we do not handle them at this time. We have also handled sewing machines and victrolas. * * *

"We don't do any upholstering business, nor do we manufacture any furniture. We have never handled any heavy pieces of furniture, only end tables, cigar stands, and things of that character; I would say occasional pieces probably would be—small items of occasional pieces. * * * We primarily

used them for sale promotion on electrical appliances; we do not stock up in any furniture. We have never carried heavy pieces of furniture; we do carry bedding, bed mattresses, springs, at our Grand River store; we put them in in January, 1940, since this suit was started, but we had never had any prior to 1939. We have never had any living room furniture, dining room furniture, or rugs, except small throw rugs. These were used for the same purpose we used the end tables, cigar stands, and so forth. We have never bought used furniture for sale, but we have traded in and sold a considerable quantity of it.     *     *     *

"*Q.* And do you deal in only new merchandise?

"*A.* No, we handle secondhand, particularly those items that we trade in. We rebuild and resell. Our volume, a very considerable amount of it, is in the second hand line, because we have trade-in merchandise like an automobile dealer.     *     *     *

"We do not have any canvassers out at the present time and haven't had since 1927, we have never had many, our business has been based on advertising."

At the time of trial plaintiff had three stores in Detroit, located at 6321 Gratiot, 13540 Gratiot, and at 4161 Oakman boulevard at Grand River. It had carried on rather extensive newspaper, radio, and circular advertising, generally using the name "Moon Brothers," without including the word, "Incorporated," or "Inc.," as a part of its name.

Defendants, Walter K. Moon and John C. Moon, brothers, had conducted a business under the assumed name of "West Side Sales," but in May, 1939, changed such name by filing with the county clerk two certificates of assumed names, as follows: "Moon Brothers Furniture, 4519 Grand River avenue," and "Moon Brothers Upholstering, 4525 Grand River avenue." On cross-examination John

C. Moon testified as follows in regard to changing their name:

"*Q.*  Mr. Moon, why did you change your name from the West Side Sales Company to Moon Brothers Furniture?

"*A.*  Well, there is two or three reasons. One was confusion with another furniture store called the West Side Furniture on Michigan avenue, and the main reason was West Side Sales didn't stand for anything. It could be furniture, threshing machines or rubber goods. It didn't signify or stand for anything.

"*Q.*  And didn't you realize there would be confusion in regard to Moon Brothers?

"*A.*  I didn't think there would, because it is a different type of business. They are in the appliance business. We are in the furniture business.

"*Q.*  You are in the appliance business too, aren't you, Mr. Moon?

"*A.*  No, sir, I would not call it so. Appliance business is definitely electrical appliances.

"*Q.*  If you sell appliances, aren't you in the appliance business?

"*A.*  I would not call it that. We are in the furniture business.

"*Q.*  If I come in to your store and wanted to buy a washing machine, do you mean you would refuse to sell it to me?

"*A.*  Not if I had a used washer you could use. I would sell it to you.

"*Q.*  Isn't that true of electrical appliances?

"*A.*  Anything we have, any used stuff, yes.

* * *

"*Q.*  You testified that the West Side Sales was a growing business all the time?

"*A.*  Yes, sir.

"*Q.*  And still you went ahead and changed your name?

"*A.*  Irrespective of what the name was, we got a

certain amount of business anyhow from steady clients, steady customers. * * *

"*Q.* And you were in business as the West Side Sales, you and your brother from 1932 to 1938, is that right?

"*A.* Till the spring of 1939. It was called West Side Sales until we changed it in May, 1939.

"We changed the name to brothers, because we are brothers. West Side Sales was used when my brother and Mr. O'Connell started the auction rooms. The name did not mean much. It was ourselves who made the increase in business.

"*Q.* Yes, but weren't yourselves operating under that name?

"*A.* Yes, but they knew our name was Moon. They didn't think of West Side Sales. They knew our name was Moon.

"*Q.* You built it up under West Side Sales so that you had an increase in business every year, is that not right?

"*A.* I don't think that was due to the name. It was due to our own efforts and our own name."

Defendants did a general furniture business in new and used furniture, manufactured upholstered furniture, did furniture repairing and upholstering, handled repossessed furniture for finance companies and shopworn and trade-in furniture from other stores. Defendant John C. Moon testified they handled secondhand electrical appliances, but did not sell new electrical appliances; that, when customers requested new appliances, they sent them across the street to Raimi Brothers' store and received "some" commissions from such sales. However, there is evidence that defendants carried new gas stoves. Defendant John C. Moon further testified that they did little advertising and obtained their business through salesmen and door-to-door solicitation.

Witnesses for plaintiff testified, in substance, regarding defendants' use of the words "Moon Brothers," as a part of its business names: That defendants' employees represented themselves as employees of "Moon Brothers" in soliciting upholstering business; that plaintiff received many telephone calls that were intended for defendants; that plaintiff received letters addressed to Moon Brothers which were intended for defendants; that plaintiff received payments which were intended for defendants; that plaintiff received one freight shipment intended for defendants. One witness testified he read defendants' newspaper advertisement for carpet, signed "Moon Bros. Furn., 4519 Grand River," and that he went to plaintiff's store, but, when testifying, admitted carelessness in reading the advertisement. Another witness testified that a man called at his home, said that he was from Moon Brothers, and obtained an order for upholstering, the witness believing he was dealing with plaintiff. Another witness testified that a man telephoned her about an estimate for upholstering furniture, stating, "This is Moon Brothers," but did not say Moon Brothers Furniture nor Moon Brothers Upholstering. Another witness testified she recommended plaintiff for upholstering furniture, because a solicitor called on her regarding upholstering furniture and said that he was from Moon Brothers.

The record indicates that, in at least one instance, a person called plaintiff's store, inquired regarding upholstering furniture, and that plaintiff's representative informed her that they would call for the furniture that afternoon, although such representative admitted upon cross-examination that they never intended to, and did not, call for such furniture; that in some instances telephone calls received by plaintiff, but intended for defendants, were not

referred to defendants; that in at least two instances plaintiff received letters intended for defendants which it did not forward, but retained as evidence in this case. One of defendants testified that he received calls intended for plaintiff and referred such calls by giving the caller plaintiff's telephone number.

It appears that signs in front of defendants' stores had been changed so as to indicate Moon Bros. Furniture and Moon Bros. Upholstering. The evidence indicates that there was no similarity in the appearance of plaintiff's stores and defendants' stores. In that connection plaintiff's collection and credit manager testified:

"*Q.* What was the general appearance of the store [defendants']?

"*A.* I would say it was, oh, probably a poor type of secondhand furniture store.   *   *   *

"*Q.* And you say it was a poor secondhand store?

"*A.* Had that appearance. It had that appearance on the inside, yes.

"*Q.* And Moon Brothers, Incorporated, hasn't the appearance of a poor secondhand store, has it?

"*A.* No.

"*Q.* There is no comparison, is there?

"*A.* Not as to the set-up, either on the outside or the inside.

"*Q.* And there is no comparison of the merchandise handled by the two concerns, is there?

"*A.* No.   *   *   *

"*Q.* And all the electrical appliances that you saw in Moon Brothers Upholstering were secondhand, weren't they?

"*A.* Apparently they were. They were secondhand.

"*Q.* And Moon Brothers, Incorporated, sell primarily new merchandise?

"*A.* Yes, sir.   *   *   *

"*Q.* And there is no comparison of the two companies in the merchandise they handle, is there?

"*A.* I would say not, with the exception of the secondhand appliances and stoves."

Plaintiff's principal business was in new electrical and gas appliances. Defendants' principal business was upholstering and secondhand furniture. The only direct competition of consequence appears to have been between new electrical and gas appliances handled by plaintiff and secondhand electrical and gas appliances handled by defendant.

At the conclusion of the trial the court stated, in part, in his opinion:

"It appears in this case that the plaintiff has not, in building up his business, as far as advertising is concerned, as far as the value, if it is value, and it unquestionably has a great value, has not used its corporate name. And the value that the plaintiff has built up is a value of the name 'Moon Brothers,' not, 'Moon Brothers, Incorporated.' * * *

"So far as the claim and allegation in the bill of complaint being unfair trade, or unfair competition, the proofs do not establish to this court, that there are many elements of unfairness on the part of the defendant. I don't think that the plaintiff corporation has acquired the exclusive right to use, in the conduct of its business, as against anyone else, the name 'Moon Brothers.' There is no showing in this case that the defendants' actual using as a part of its trade name, 'Moon Brothers,' was for the purpose of deceiving the public as to who were the actual parties in interest in defendants' business. That it has led to some confusion so far as the public is concerned, there is no doubt, but that such confusion, so far as knowing which concern the patron or proposed purchaser desired to get in contact with, there was no misrepresentation in the manner in which the defendant used the name which it certi-

fied to the county clerk for use under the statute,* mainly [namely?], 'Moon Brothers Furniture.' There could be no confusion occasioned by that separate name printed in the telephone book. It is printed very clearly and a separate telephone number given. Just above it, as it appears from Exhibit 14, the plaintiff's name, not, as I recall it, its corporate name, Moon Brothers, Incorporated. If there was confusion arising from that, it would occur to me that was as much due to the fact that in that particular matter the plaintiff did not use its proper name, as that the defendant did not use its proper name.

"As I said, there is no doubt but what there has been some confusion due to the use of those two names, 'Moon Brothers, Incorporated,' and, 'Moon Brothers Furniture Company.' There is, I think, very little doubt that to a small extent plaintiff corporation did some little business similar to what a large part of the defendants' business is, but I think that is rather trifling, the extent to which there was overlapping in the kind of business done by the two concerns. I think that the testimony does not establish that there has been any substantial damage or injury to the plaintiff in the matter of competition, getting business, which anyone intended for the plaintiff.    *    *    *

"I don't think that the proofs and pleadings and the actual circumstances in which the respective parties find themselves at the present time would warrant all the relief that the plaintiff prays for. I don't think the defendant should be enjoined permanently from using the name 'Moon Brothers,' if used as a part of its trade name. As I recall, there is no testimony that the defendants had used Moon Brothers alone, but they have used, 'Moon Brothers Furniture,' and if they use that name together— 'Moon Brothers Furniture'—as they did file their

---

* See 2 Comp. Laws 1929, § 9825 *et seq.*, as amended by Acts Nos. 272, 274, Pub. Acts 1931 (Comp. Laws Supp. 1935, § 9825 *et seq.*, Stat. Ann. § 19.821 *et seq.*).—REPORTER.

certificates for authority to do, I think there will be very little confusion and I think the plaintiff will not sustain any damage.

"The exhibits, some of them, show the name of the defendants on the defendants' store, one or more of them in a form which I think is not justifiable, and it is not in the form of their certificates for transacting business. I think the defendant should change those advertisements or signs to indicate the name of their business, 'Moon Brothers Furniture,' in one line, and in the same size type, so that no one looking at it will get the impression that the concern doing business there is Moon Brothers, Incorporated, or Moon Brothers, because, as plaintiff contends very reasonably, that combination, 'Moon Brothers,' has been of large value, is of large value, and cost the plaintiff a lot of money. I think the extent of the relief to be granted in this case is in substance that the defendant be ordered, wherever any advertising or signs, or other publications of its trade name are used, that they use the three words contained therein in one line, and all the same size type, and that the defendant do not use the term, 'Moon Brothers,' separately. Counsel may prepare and submit a proposed decree to that effect.''

The decree entered in pursuance of such opinion, May 17, 1940, provided, in part, as follows:

"It is hereby ordered, adjudged and decreed that the defendants herein, wherever in any advertising, or signs or other publications of their trade name, they use the three words contained therein, Moon Bros. Upholstering, or Moon Bros. Furniture, in one line, and of the same size type.

"It is further ordered, adjudged and decreed that the said defendants and their agents be restrained and enjoined from using the term 'Moon Bros.' separately."

Plaintiff concedes defendants' right to use their family name, "Moon," as a part of their business

names. Defendants had the right to use the words, "furniture" and "upholstering," as a part of their business names and also the right to compete for business with plaintiff. The only question is as to defendants' right to use the word "Brothers" or the abbreviation "Bros." in connection with the name "Moon."

As there is no statutory prohibition against defendants' doing business under the names they have assumed, the question before us must be determined under the rules of unfair business competition. *Peninsular Stove Co.* v. *Augst,* 288 Mich. 465. As said in *Good Housekeeping Shop* v. *Smitter,* 254 Mich. 592, 596: "Each case is determined upon its own facts and relief is based upon the principles of common business integrity." In *Peninsular Stove Co.* v. *Augst, supra,* p. 470, this court held:

"The rule as to unfair competition as recognized by our court is well stated in *Schwannecke* v. *Genesee Coal & Ice Co.,* 262 Mich. 624, where we said:

" ' "Unfair competition ordinarily consists in the simulation by one person, for the purpose of deceiving the public, of the name, symbols, or devices employed by a business rival, or the substitution of the goods or wares of one person for those of another, thus falsely inducing the purchase of his wares and thereby obtaining for himself the benefits properly belonging to his competitor. The rule is generally recognized that no one shall by imitation or unfair device induce the public to believe that the goods he offers for sale are the goods of another, and thereby appropriate to himself the value of the reputation which the other has acquired for his own product or merchandise." 26 R. C. L. p. 875.' "

See, also, *Schwannecke* v. *Genesee Coal & Ice Co., supra; Clipper Belt Lacer Co.* v. *Detroit Belt Lacer Co.,* 223 Mich. 399; *Young & Chaffee Furniture Co.*

v. *Chaffee Brothers Furniture Co.*, 204 Mich. 293; *Williams* v. *Farrand*, 88 Mich. 473 (14 L. R. A. 161).

The rules of law applicable to the situation presented in the present case were expressed by Mr. Justice FELLOWS in *Young & Chaffee Furniture Co.* v. *Chaffee Brothers Furniture Co., supra,* pp. 298, 302–304, as follows:

"But generally speaking one has the right to use his own name; he may not use it in such a way as to lead the public to the belief that they are dealing with another, or that his wares are the wares of another; he may not by any artifice so use his name as to deceive the public into the belief that his establishment is the establishment of another, thereby bringing to himself profit not properly appertaining to himself and his business, and thus inflicting damage on his competitor. It was said by Justice Devens, speaking for the court in *Russia Cement Co.* v. *LePage,* 147 Mass. 206 (17 N. E. 304, 9 Am. St. Rep. 685):

" 'A person cannot make a trade-mark of his own name, and thus debar another having the same name from using it in his business, if he does so honestly, and without any intention to appropriate wrongfully the good will of a business already established by others of the name. Every one has the absolute right to use his own name honestly in his own business for the purpose of advertising it, even though he may thereby incidentally interfere with and injure the business of another having the same name. In such case the inconvenience or loss to which those having a common right to it are subjected is *damnum absque injuria.* But although he may thus use his name, he cannot resort to any artifice or do any act calculated to mislead the public as to the identity of the business, firm or establishment, or of the article produced by them, and thus produce injury to the other beyond that which results from the similarity of name.'  *  *  *

"We are not impressed from an examination of all the testimony, including the exhibits, that outside of some petty annoyances, such as telephone calls and an occasional small payment of money to plaintiff, which belonged to defendant, that there has been any considerable amount of confusion, or that plaintiff has suffered annoyance consequential in any amount when the amount of their business is considered. Plaintiff's managers seem to have prepared for this lawsuit by filing such evidence of confusion as they were able to collect over some period. Their exhibits show that in several instances letters asking extension of time from persons owing defendant company came to plaintiff; around a dozen orders for goods specially advertised by defendant were received by plaintiff. In only one instance do these exhibits show dealing with defendant company under the mistaken belief that the party was dealing with plaintiff. * * *

"We are satisfied that the confusion shown is inconsequential in amount, and that it is not due to any artifice on the part of the defendants or any of them. Plaintiff's proofs have not established a cause for equitable relief. It is not necessary for us to consider the question raised by plaintiff that while one may use his own name in a business he may not confer that name upon a corporation, as we are satisfied that defendants have not so used their family name in the name of this corporation as to lead the person of ordinary intelligence to believe he was dealing with plaintiff company, nor that defendants have exceeded the boundaries of fair competition."

A comparison of plaintiff's name, "Moon Brothers, Incorporated," with defendants' assumed names, "Moon Brothers Furniture" and "Moon Brothers Upholstering," persuades us that a person of ordinary intelligence would not assume that they were one and the same company. There might be some confusion by the careless or indifferent

reader, but, as said in *Young & Chaffee Furniture Co. v. Chaffee Brothers Furniture Co., supra,* p. 297:

"A court of equity should not issue its stringent writ of injunction upon such bare possibilities."

In *Central Mutual Auto Insurance Co. v. Central Mutual Insurance Company of Chicago,* 275 Mich. 554, 560, this court said:

"There may be some confusion resulting from the similarity of the names of plaintiff and defendant, but the confusion of which the court takes cognizance must be something more than that resulting from carelessness or ignorance on the part of the uninformed. The strong arm of a court may not, in equity and good conscience, be invoked on account of anything over which defendant has no control."

The record does not disclose sufficient evidence of unfair business competition to justify our enjoining defendants from using the words, "Moon Brothers" or "Moon Bros.," as a part of their assumed business names, nor sufficient evidence to justify our enjoining defendants from dealing in electrical appliances.

The decree of the trial court enjoins defendants from using the words, "Moon Bros.," separately and provides, in substance, that defendant shall use the three words, "Moon Bros. Furniture," or "Moon Bros. Upholstering," in one line, and of the same size type.

We are satisfied that the testimony presented warranted the finding and decree of the trial court.

The decree is accordingly affirmed, with costs to defendants.

CHANDLER, C. J., and BOYLES, NORTH, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.