SCHWAFERT v. DOERNER.

1. TRUSTS—FINDING OF COURT—EVIDENCE—PURCHASE OF INTEREST
   —LOAN.
   In suit to impress a trust upon shares of stock in defendant cor-
   poration standing in name of individual defendant and for
   an accounting, evidence sustained finding of trial court that
   plaintiffs had purchased an interest in business which was
   subsequently taken over by the corporation rather than loaned
   money to individual defendant.

2. SAME—INCREASE IN VALUE—PROFITS.
   Plaintiffs who are owners of an interest in the assets and busi-
   ness by virtue of advancement made to another who, in his
   own name, took stock in defendant corporation which subse-
   quently took over the business, are entitled to any increase
   in the value of its assets notwithstanding they have also
   received large profits on their investment.

3. APPEAL AND ERROR—CHANCERY CASES—EQUITY.
   The Supreme Court will not reverse decrees in chancery cases
   unless persuaded they are unfair and inequitable and not in
   accord with the just rights of the parties.

4. EQUITY—PLAINTIFF MUST DO EQUITY.
   Plaintiffs seeking equitable relief must do equity.

5. TRUSTS—TENDER AS CONDITION OF EQUITABLE RELIEF.
   Where individual defendant to whom plaintiffs gave a sum of
   money for investment in a business then being established,
   later received such sum from him honestly believing it to be
   a dividend whereas it was an attempted repayment, they are
   not barred from equitable relief by way of getting shares
   of stock in subsequently-formed corporation because of lack
   of tendered repayment but are ordered to make repayment of
   same less unpaid costs taxed or taxable in trial court in
   plaintiffs' favor.

6. Same—Equity—Adequate Remedy at Law—Estoppel—Laches.
   In suit to impress trust on shares of stock in defendant corporation, brought by parties who had advanced money to individual defendant to assist in establishing business subsequently taken over by the corporation, claims that plaintiffs had an adequate remedy at law, or because of estoppel or laches should not have equitable relief, *held*, without merit.

7. Appeal and Error—Amendment of Pleading—Evidence.
   Plaintiffs' bill of complaint may be amended in Supreme Court to accord with proofs adduced (Court Rule No. 72 [1945]).

8. Costs—Failure of Either Party to Prevail Fully on Appeal.
   No costs are awarded on appeal where neither party fully prevails on appeal.

Appeal from Ingham; Hayden (Charles H.) J. Submitted April 10, 1947. (Docket No. 43, Calendar No. 43,680.) Decided May 16, 1947.

Bill by Rudolph Schwafert and wife against Karl Doerner and Hofbrau, Inc., to impress a trust upon shares of stock standing in the name of defendant Doerner and for an accounting. Decree for plaintiffs. Defendants appeal. Modified and affirmed.

*Dwight L. Wilson,* for plaintiffs.

*Person & Searl,* for defendants.

North, J. By their suit in chancery plaintiffs obtained a decree by which 100 shares of stock in the defendant corporation, which stock stood in the name of defendant Karl Doerner, were transferred to plaintiffs. Both defendants have appealed, though defendant Doerner is the real party having an interest in the issue involved. We refer to him herein as appellant. The primary issue is one of fact, and there is a direct conflict between the testimony produced in behalf of the respective parties. Aside from certain other issues hereinafter

noted, the gist of appellant's contention is that the decision of the trial judge was contrary to the preponderance of the evidence.

In October, 1933, plaintiffs provided appellant with $200. Decision herein primarily hinges on whether plaintiffs turned over the $200 to appellant to be used by him as an investment for plaintiffs as hereinafter detailed or was it a loan by plaintiffs to appellant. In amplification of the foregoing we quote the following from the trial court's opinion:

"The plaintiffs, Rudolph Schwafert and Frieda A. Schwafert, are husband and wife. The defendant, Karl Doerner, is the brother of the plaintiff, Frieda A. Schwafert, and the defendant, Hofbrau, Inc., is a corporation organized and existing under the laws of the State of Michigan, and its stockholders [are] Eric Picard, Karl Doerner, Fritz Vedder and Eric Windfuhr. * * *

"In October, 1933, these people, together with a Mr. Kloppert, formed a copartnership under the name of Alt Heidelberg, for the purpose of conducting a restaurant and beer garden in the city of Lansing, Michigan.

"Karl Doerner at that time was unemployed and had been unemployed for a year and a half. During all of this time he had roomed and boarded with the plaintiffs and had not paid them anything for his room and board, he being without funds.

"Shortly prior to October, 1933, Karl Doerner approached the plaintiffs with the proposition that they invest [appellant claims it was a loan] $200 in the business of Alt Heidelberg and he represented to them that if this business got started he would have a job as manager and bartender, would be able to pay them for his board and room, and that they would make large profits. This was during the depth of the depression. * * * They advanced $50 to Karl Doerner, and claim to have told him to be sure and put this in their name, and the next

night Mr. and Mrs. Schwafert went to the home of Eric Picard where they were advised that a meeting was being held to perfect the organization. Mr. Schwafert, while Mrs. Schwafert stayed in the car, took $150 into Eric Picard's home, gave it to Eric Picard, and claims to have said, in effect, 'This is for our interest in the business', and 'to put it in our name', and then left the room.

"It is not disputed by the defendants that the $200 was paid, and that Rudolph Schwafert did take the $150 into the room at the Picard home where the meeting was being held and did put it on the table between Eric Picard and Karl Doerner, but it is disputed that he said it was for the Schwaferts' interest in the business or to put it in their name, and it is claimed that what he said was that they were to witness that he was giving or lending Karl Doerner the $150. However, I am convinced that it was understood by all present that Rudolph Schwafert was advancing this money for an interest in the business, as it is inconceivable to me, in view of all of the surrounding circumstances, the fact that he at that time owed them for a year and a half board and room money, and that the only job he had in sight was the one with this business, that they would lend him additional money, together with subsequent events as disclosed by the record.

"At the meeting on this night or the next, a partnership agreement was signed by Kloppert, Vedder, Picard, Windfuhr, and defendant Doerner. The plaintiffs, Schwaferts, it is undisputed, had no knowledge that such an agreement had been drawn up by Karl Doerner, or that it would be signed that evening. They did not have any knowledge until later that same night or the next night when Karl Doerner showed them this agreement, and they then learned that he had taken their interest in his own name. When they learned this, the Schwaferts and Doerner had 'a big disagreement', and it is claimed Doerner threatened to tell the Motor Wheel

[where Schwafert worked] that the Schwaferts had money. invested in another business, and even threatened to burn them out, and he left the house and did not stay there that night.

"The Schwaferts were older people than the others, and had not lived in this country long, and claim not to be familiar with its laws and customs, and they were afraid that if Mr. Schwafert's employer, the Motor Wheel Corporation, should learn that they had money to invest in a business that they would discharge him. Doerner it is claimed by plaintiffs took advantage of their fear and prevented them from at that time having the partnership agreement changed to make the Schwaferts partners in the business. * * *

"Doerner admitted in his testimony, among other things, that the Schwaferts gave him both the $50 and the $150, and stated that the day after the partnership agreement was signed he showed it to Schwaferts and that they then had an argument, 'because they claimed that they were to have an interest, that the stock taken in my name should have been in their name, and I continued to hear that they so claimed, and I never; said anything about it.'"

On April 26, 1934, the parties interested in the partnership, except Mr. Kloppert and Eric Windfuhr, organized a corporation which by a subsequent change of the corporate name became the defendant corporation; and it thereafter carried on the business of the former partnership. Not long after the corporation was organized plaintiffs learned that appellant had taken the stock represented by the $200, which plaintiffs claim they had invested in the business, in his own name and plaintiffs demanded that appellant should have the stock reissued in their name; and plaintiffs offered testimony in support of their claim they were told by appellant that

that was impossible and that he would turn over to them the dividends earned by their stock. In this connection, upon plaintiffs' demand, appellant gave plaintiffs the following writing:

"June 15, 1934

"Received from Rudolph Schwafert two Hundert Dollars *fier anteil ap* restaurant Hofbrau.
$200                  (sgd) KARL DOERNER"

There was testimony that the German words in the foregoing instrument mean "for share", "for part of". Plaintiff Rudolph Schwafert testified: "The word 'anteil' means 'stock' every German who was in the school knows that." It can scarcely be doubted under the record that plaintiffs accepted the above quoted instrument from appellant in the belief that it acknowledged and evidenced their ownership of stock in the corporation, notwithstanding appellant's contention is that it was merely a receipt for money which he asserts he received as a loan from plaintiffs in 1933.

As to payment of dividends the record fairly discloses the following. For a number of years no dividends were paid and when plaintiffs made inquiry they were told that the expenses of the corporation were such that no dividends were earned. When in 1939 the first dividend was paid, Mr. Schwafert gave appellant $20 or $25 out of the $50 dividend check. Mr. Schwafert then told appellant that in the future he would receive one-half of the dividends. The first dividend check was made payable to Mr. Schwafert. Another dividend was paid during the 1939 holidays, but by agreement with Mr. Schwafert, Doerner, who was about to make a trip south, received the whole of that dividend in the amount of $50. However, he told Mr. Schwafert he was to retain the full amount of

the next dividend check. Except for certain testimony by Doerner, it appears that after payment of the above dividends, the next payment to plaintiffs seems to have been $140 in January, 1944, remitted to them by two postal money orders, one for $100 and one for $40. In June, 1944, plaintiffs received another remittance of $200 made to them by Doerner's personal check. Doerner was the manager and treasurer of defendant corporation. Plaintiffs claim that they understood the June, 1944, remittance, like the preceding January remittance, was a dividend from the defendant corporation; and at least as to the $200 check they included it in making their income tax report. Appellant claims that the $200 was in repayment of the loan which he asserts was made by plaintiffs to him in 1933, and he further claims that the division of dividends made between him and plaintiffs was in accordance with an understanding between them that plaintiffs should have a half of the profits in lieu of interest on the $200 loan. But it is rather noticeable that appellant testified concerning the $200 payment as follows:

"I just sent them the check without any explanation. They didn't know that the $200 check was in payment of loan until they called me in March, 1945. * * * When I sent the Schwaferts the $200 check, I did not tell them it was in repayment of the loan, I didn't tell them anything. Prior to that I paid them dividends either in cash or by money order."

Further, as to the $200 payment Doerner testified:

"I told the Schwaferts in March, 1945, before this suit was started (in April, 1945), that the $200 sent to them in June, 1944, represented the repayment of the original $200 loaned to me. They have never

returned the $200 to me, they have never offered to return it to me, they have never tendered it back to me. * * * We never paid a dividend of $200."

We forego review of much other testimony bearing pro and con upon the issue under consideration. Careful study of the whole record brings the conviction that a correct determination of this issue was reached by the circuit judge, who saw and heard the various witnesses, and who in his filed opinion included a careful and detailed review of the relevant testimony. In reaching the above conclusion we are mindful that plaintiffs, because the defendant corporation has prospered, have received a large profit on a rather modest investment; but as observed by the trial judge, if plaintiffs "are the owners of an interest, then they are entitled to any increase in value of the assets and business of Hofbrau, Inc." As bearing upon the issue hereinbefore considered it is pertinent to note, as we have often done, the rule quoted from earlier cases in *Westgate* v. *Westgate,* 305 Mich. 423, 432, as follows:

"It is not the policy of this Court to reverse decrees unless convinced that they are unfair and inequitable. In *Moore* v. *Moore,* 231 Mich. 209, at 210, Justice Fellows said:

" 'We hear chancery cases *de novo,* but we do not, and should not, reverse decrees unless we are persuaded they are not in accord with the just rights of the parties.' *Van Nest* v. *Van Nest,* 266 Mich. 34."

Appellant claims that since the trial judge held plaintiffs were the owners of the stock in the defendant corporation which appellant fraudulently retained in his name, plaintiffs should be required to repay appellant $200 which by his check he remitted to them in June, 1944. This claim does not appear

to have been considered or passed upon by the trial judge either in his filed opinion or final decree. Perchance it was not presented in the trial court. Nonetheless our review of the record satisfies us that this $200 was not a dividend. Instead, we think it was an attempted payment by appellant with his own money, and that he hoped thereby to establish his claim that the stock in the defendant corporation belonged to him instead of plaintiffs. Plaintiffs are seeking equitable relief and they are required to do equity. We are of the opinion that plaintiffs honestly believed the $200 was the remittance of a dividend, but it has now developed that such was not the fact. Because of their honest belief plaintiffs are not barred from relief because they did not tender repayment. An amended decree in this Court will require repayment of the $200 less any unpaid costs taxed or taxable in the trial court in favor of plaintiffs and against Doerner.

Under this record we find no merit in appellant's contention that plaintiffs are not entitled to equitable relief because they have an adequate remedy at law, or that plaintiffs because of estoppel or laches should not be decreed relief. Nor is there merit in appellant's contention that the proofs are not in exact accordance with the allegations in the bill of complaint. Were there any occasion for so doing, the pleading might still be amended in this Court. Court Rule No. 72 (1945).

An amended decree may be entered in this Court in accordance with the foregoing; but since neither plaintiffs (who seek affirmance of the trial court's decree) nor defendants have fully prevailed, no costs on this appeal will be awarded to either party.

CARR, C. J., and BUTZEL, BUSHNELL, SHARPE, BOYLES, REID, and DETHMERS, JJ., concurred.