EDELMAN REALTY COMPANY *v.* EDELMAN.

1. TRADE-MARKS AND TRADE NAMES—SALE OF BUSINESS—CORPO-
RATIONS—INJUNCTION—EXPRESS RESTRICTION UPON USE OF NAME
BY INDIVIDUAL.

> Restriction upon defendant who had sold to the individual plain-
> tiffs his interest in plaintiff real-estate corporation, whose
> name included his surname, that he not operate as a real-
> estate broker, or license real-estate salesmen for a period of
> 3 years after the sale but could buy and sell real estate in his
> own name, excluded any possible claim in injunction suit based
> on the theory of an implied restriction of like nature.

2. SAME—CONTRACT OF SALE—REAL-ESTATE BROKER.

> Defendant who sold his real-estate corporation, whose name in-
> cluded his surname, to individual plaintiffs was properly
> found by trial judge in injunction suit to have not violated
> contract whereunder he agreed not to operate as a real-estate
> broker nor to license salesmen for a 3-year period within
> named city although expressly authorized to buy and sell real
> estate in his own name, notwithstanding he and another person
> formed a partnership using his surname and a corporation
> was formed, and evidence shows defendant, the partnership
> and the corporation bought and sold property.

3. CONTRACTS—PURCHASE OF GOOD WILL—IMPLIED UNDERTAKING.

> The purchase of the good will of a business does not carry with
> it an implied undertaking on the part of the seller to refrain
> from doing what the agreement of the parties stated he might
> do.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 24 Am Jur, Good Will § 21.
[3] 24 Am Jur, Good Will § 18.
[5, 6] 24 Am Jur, Good Will § 24.
[7] 24 Am Jur, Good Will § 26; 36 Am Jur, Monopolies, Combina-
tions and Restraints of Trade § 69.

4. INJUNCTION—CONTRACT NOT TO ENGAGE IN BUSINESS.

No claim of a right to relief in suit for injunction, based on defendant's agreement not to operate as a real-estate broker and to license salesmen, was tenable after expiration of period that he agreed not to operate in such capacities.

5. PROPERTY—RIGHT TO USE OF OWN NAME IN BUSINESS.

A person has the right to use his own name in the conduct of a business unless he has expressly covenanted otherwise.

6. TRADE-MARKS AND TRADE NAMES—USE OF OWN NAME—FRAUD—DAMAGE.

Generally speaking, one has the right to use his own name but he may not use it in such a way as to lead the public to the belief that they are dealing with another, or that his wares are the wares of another; he may not by any artifice so use his name as to deceive the public into the belief that his establishment is the establishment of another, thereby bringing to himself profit not properly appertaining to himself and his business, and thus inflicting damage on his competitor.

7. SAME—INJUNCTION—GOOD WILL—USE OF NAME—PREJUDICE.

Plaintiff corporation and its owners who had purchased it from defendant were not entitled to an injunction prohibiting him from using his surname in the purchase and sale of real estate, where he was expressly authorized to do such business, 3-year period during which he had agreed not to operate as a broker or to license salesmen has expired, and there is but little confusion of a minor nature and it has not resulted in material prejudice to plaintiffs.

8. SAME—UNFAIR COMPETITION—EACH CASE DECIDED ON OWN FACTS.

Each case of unfair competition must be determined upon its own facts.

9. INJUNCTION — REAL-ESTATE BUSINESS — GOOD WILL — SUPREME COURT.

Decree of trial court denying injunctive relief to purchasers of corporate business and good will as to conduct of defendant in the purchase and sale of real estate on his own account and not as broker is not disturbed under evidence presented by witnesses who were heard by the trial court, where record is such that had the Supreme Court been in his position a different conclusion would not have been reached and it is in accordance with the just rights of the parties.

Appeal from Wayne; Murphy (George B.), J. Submitted January 13, 1956. (Docket No. 34, Calendar No. 46,615.) Decided March 1, 1956. Rehearing denied April 12, 1956.

Bill by Edelman Realty Company, a Michigan corporation, Morris Singer and Albert Letvin against Bernard Edelman and Grant Silverfarb, individually and as the copartnership Bernard Edelman Real Estate, and Bernard Edelman Associates, Inc., a Michigan corporation, for injunction restraining use of name, for accounting and other relief. Decree dismissing bill. Plaintiffs appeal. Affirmed.

*Harold Goodman,* for plaintiffs.

*Kasoff & Young,* for defendants.

CARR, J. Plaintiffs brought this suit in equity alleging that defendants were guilty of unfair competition to the detriment of plaintiffs, and asking for injunctive relief. It does not appear that there is any serious disagreement between the parties as to the material facts. In 1937 defendant Bernard Edelman entered the real-estate business in Detroit, operating as a salesman and later as a broker, and also buying and selling property for his own account. In his brokerage business he employed a number of salesmen, including the plaintiffs Singer and Letvin. In October, 1948, said plaintiffs, in conjunction with 2 other salesmen employed by Edelman, entered into an agreement with the latter for the purchase of the good will, trade name, and furniture and fixtures used in the business, together with signs and other property and property rights used in connection therewith. The written undertaking set forth that the purchasers intended to form a corporation under the name Edelman Realty Company, which was the assumed name under which the defendant had been

operating. It was apparently understood that each purchaser was to pay the sum of $5,000 for a 1/4 interest.

Following the making of the agreement referred to, the corporation was formed and proceeded to carry on the business. In accordance with the contract, defendant Bernard Edelman acted in an advisory capacity for a period of 60 days following the sale. It was also stipulated that the purchasers should not sell "the trade name of Edelman Realty Company as a separate and distinct asset aside from said corporation," and that for a period of 3 years after the consummation of the sale defendant Edelman should not operate as a real-estate broker, or license real-estate salesmen, within the city of Detroit. It was expressly stated, however, that such provision should not be deemed to mean that Edelman could not "buy and sell his own real estate" during said period. Other provisions of the contract of October 14, 1948, do not require specific discussion.

The record indicates that plaintiffs Singer and Letvin carried out their respective agreements with reference to the payments for the interest received by each in the business and assets. The other 2 purchasers gave notes, secured by a pledge of their stock in the Edelman Realty Company by way of security. The obligations were not paid and, either by foreclosure or by agreement of the parties, defendant Edelman became the owner of the pledged stock. Thereupon he participated in carrying on the business of the corporation in conjunction with plaintiffs Singer and Letvin. He also bought and sold real estate for his own account.

It does not appear that any material differences arose between the parties but in December, 1949, a second agreement was made and reduced to writing pursuant to which Singer and Letvin purchased de-

fendant Edelman's stock in the corporation for $15,000. To this agreement the corporation was a party, it being executed therefor by Singer as president and Letvin as secretary-treasurer. It was expressly provided therein that the agreement for the sale of the property, executed on October 14, 1948, should be of no force and effect except as to certain provisions incorporated in the new contract. Among the provisions so incorporated was the undertaking on the part of defendant Edelman that he would not for a period of 3 years from and after the date of the contract engage in the real-estate brokerage business in the city of Detroit, or license real-estate salesmen. It was further stipulated, as in the contract of purchase, that such provision should not prevent Edelman from buying and selling real estate, such operations on his part being "expressly permitted." Other restrictive covenants retained by the parties are not involved in the present controversy. It may be noted, however, that the provision in the first contract with reference to the disposition of "the trade name of Edelman Realty Company" was retained.

Following the purchase of defendant Edelman's stock in the corporation its business continued under the management of plaintiffs Singer and Letvin. The business was financially successful. The greater part of the income was received by way of commissions on sales of property listed with plaintiff corporation. In some instances the corporation bought and sold property at a profit. It also received some income, not extensive in amount, from its rental and insurance businesses. Defendant Edelman continued his operations in the purchase and sale of real estate, but it is not shown by the proofs in the case that he did a brokerage business. He associated himself in his operations with defendant Silverfarb, the 2 operating as a copartnership under the name of Bernard Edelman Real Estate. He also organized

a corporation under the name of Bernard Edelman Associates, Inc. The business of buying and selling property was conducted under the names of said partnership and said corporation, and perhaps in part under the name of Bernard Edelman.

In their suit plaintiffs challenge the right of the defendants to use the name Edelman in connection with the business transactions mentioned. Specifically it is urged that such use constitutes unfair competition injurious to plaintiffs, requiring the granting of injunctive relief. The argument is advanced that confusion has resulted to some extent, and will continue unless the relief sought is granted. It is the position of plaintiffs that when the business was purchased in 1948 they acquired the sole right to the use of the name "Edelman." As before noted, however, the contract of sale, as well as the second contract executed in December, 1949, referred to "Edelman Realty Company" as the trade name. A fair construction of the agreements leads to the conclusion that the purchasers bargained for the right to use the name under which the business had been conducted rather than the name of the seller. The plaintiff corporation was organized in accordance with the agreement. No claim is made that defendant Edelman has in any instance since severing his connection with the corporation bought and sold property, or otherwise carried on his business, under its name.

Following the hearing of the case in circuit court the trial judge filed a written opinion in which he discussed at some length the factual situation presented and the legal issues raised by the parties. It was his conclusion that the plaintiffs had not established their right to equitable relief, that defendants had not engaged in fraudulent practices calculated to deceive the public and to injure plaintiffs, that defendants had not conducted a brokerage business, and that as a practical proposition plaintiff corporation

and defendants were not in competition except perhaps as to the activities of the parties in the purchase and sale of property for their own accounts. Plaintiffs have appealed from the decree dismissing their bill of complaint, contending that the trial judge was in error in his conclusions as to the facts and the law.

The instant suit was started in circuit court on February 28, 1953, more than 3 years after the last contract between the parties was made. At that time the 3-year limitation set forth therein had ended. The practical situation is that the parties contracted as to a specific limitation to which defendant Edelman should be subject in the operation of a real-estate brokerage business. Such express stipulation excludes any possible claim based on the theory of an implied restriction of like nature. Furthermore, as above noted, the parties agreed, and so stated in their contract, that defendant Edelman should not be restricted in the buying and selling of real estate during the 3-year period. These provisions are obviously significant as to the understanding of the parties at the time with reference to the conducting of business transactions by defendant Edelman. No provision was inserted in either contract prohibiting said defendant from using his own name in carrying on the business of buying and selling real property. It is a fair inference that plaintiffs considered at the time that he would do so.

The purchase of the good will of the business did not carry with it an implied undertaking on the part of the seller to refrain from doing what the agreement of the parties stated he might do. *Getter* v. *Levine,* 315 Mich 353. The 3-year period specifically mentioned in the agreement, as above set forth, having expired before the case was started, no claim of a right to relief based thereon is tenable. *Wedin* v. *Atherholt,* 298 Mich 142.

In providing in the agreements that defendant Edelman's right to carry on the business of buying and selling real estate was not restricted, and was in fact permitted, the parties undoubtedly had in mind that he would of necessity be required to use his own name, an assumed name, or perhaps organize a corporation for such purpose. It is significant that no express limitation was imposed with reference to defendant Edelman's buying and selling property in his own name. As before pointed out, the trade name transferred under the contract of October, 1948, was "Edelman Realty Company." Defendants have not used that name. We are in accord with the finding of the trial judge that defendant Edelman has not violated provisions of the contracts involved in the case.

In the case of *Williams* v. *Farrand,* 88 Mich 473 (14 LRA 161), this Court considered at some length the right of one disposing of his interest in a going business to carry on business transactions of like nature under his own name. It was there recognized (p 488) that "a person has the right to use his own name unless he has expressly covenanted otherwise." The case has been repeatedly cited in subsequent decisions relating to the subject matter. Without discussing in detail the principles there recognized, we think it may be said that it supports the position of the defendants in the instant controversy.

In *Young & Chaffee Furniture Co.* v. *Chaffee Brothers Furniture Co.,* 204 Mich 293, in discussing the general principles applicable in a case of this nature, it was said, in part (pp 298, 302, 303):

"One may dispose of the right to use his name in connection with a certain business; he may so circumscribe himself as to be estopped from claiming the right to its use in that business; but generally speaking one has the right to use his own name; he may not use it in such a way as to lead the public to

the belief that they are dealing with another, or that his wares are the wares of another; he may not by any artifice so use his name as to deceive the public into the belief that his establishment is the establishment of another, thereby bringing to himself profit not properly appertaining to himself and his business, and thus inflicting damage on his competitor. * * *

"Do the facts established by this record authorize the relief sought? There is no claim that the defendants Chaffee have by express contract transferred to plaintiff the exclusive right to use their family name; there is no claim that they have expressly covenanted not to use their family name in the furniture business in Grand Rapids. But one of them owned any stock in plaintiff company, and he but a comparatively small amount. When he sold it he did not either expressly or impliedly covenant not to engage in the furniture business under his own name or any other name. Defendants Chaffee were but employees of the company, paid for their services as other employees were, earning their wage as other employees did. Have they so circumscribed themselves as to be estopped from using their own name in the furniture business in Grand Rapids? We think not. * * *

"We are not impressed from an examination of all the testimony, including the exhibits, that outside of some petty annoyances, such as telephone calls and an occasional small payment of money to plaintiff, which belonged to defendant, that there has been any considerable amount of confusion, or that plaintiff has suffered annoyance consequential in any amount when the amount of their business is considered. Plaintiff's managers seem to have prepared for this lawsuit by filing such evidence of confusion as they were able to collect over some period."

We think that the foregoing statement may well be applied to the facts in the case at bar. Defendant Edelman did not covenant that he would not use his

own name in the carrying on of his business, the business that he was authorized by the agreements to conduct. The confusion resulting is minor in character and it does not appear that it has resulted in any material prejudice to the plaintiffs. Neither may it be said that the advertising efforts of defendants, on which some emphasis is placed, will result in the future to the detriment of plaintiffs rather than to their advantage.

Likewise pertinent is the comment made by the Court in *Central Mutual Auto Insurance Co.* v. *Central Mutual Insurance Company of Chicago,* 275 Mich 554, 560, as follows:

"There may be some confusion resulting from the similarity of the names of plaintiff and defendant, but the confusion of which the court takes cognizance must be something more than that resulting from carelessness or ignorance on the part of the uninformed. The strong arm of a court may not, in equity and good conscience, be invoked on account of anything over which defendant has no control. Defendant is not an insurer against the ignorance or carelessness of particular individuals and may be enjoined from the use of its corporate name after admission to do business in the State by the commissioner of insurance by that name, only upon a showing the similarity of its name to that of plaintiff will mislead, or probably mislead, the public to the detriment or injury of plaintiff. *Federal Securities Co.* v. *Federal Securities Corporation,* 129 Or 375 (276 P 1100, 66 ALR 934); 6 Fletcher on Corporations (Perm ed), p 57."

In the case of *Moon Brothers, Inc.,* v. *Moon,* 300 Mich 150, it was pointed out that each case involving a claim of unfair competition must be determined upon its own facts, and that relief granted rests on principles of common business integrity. In reaching its conclusions the Court discussed at some length

prior decisions recognizing the general principles applicable in the determination of a case of the nature now before us.

The trial court had the advantage of listening to the testimony of the witnesses and was, in consequence, in position to evaluate the proofs as they were offered. On the record here we cannot say that had we been in his position we would have reached a different conclusion as to the facts. Neither may it be said, in view of the record and the general principles recognized by prior decisions of this Court, applicable here, that the decree entered is not in accordance with the just rights of the parties. Under such circumstances we do not reverse. *Schwafert* v. *Doerner,* 317 Mich 715.

The decree is affirmed, with costs to defendants.

DETHMERS, C. J., and SHARPE, SMITH, REID, BOYLES, KELLY, and BLACK, JJ., concurred.