## WORGESS AGENCY, INC. v LANE

### AUTO-OWNERS INSURANCE COMPANY v MICHIGAN NATIONAL BANK

1. Contracts—Construction of Contracts—Sale of Business—Sale of Good Will—Implied Covenants.

   The sale of a business along with its accompanying good will gives rise to a covenant precluding the seller from soliciting back to himself that which he has sold.

2. Contracts—Sale of Business—Express Restrictive Covenants—Implied Covenants—Question of Fact—Jury.

   An express restrictive covenant by the seller of a business not to compete in the field of the business sold for a specified period does not preclude the existence of an implied covenant not to *solicit* the customers of the business after the expiration of the specified period; it is a question of fact for a jury whether a seller has refrained from solicitation for a sufficient length of time where it is alleged that the seller is attempting to improperly regain that which he sold for a fair consideration.

3. Contracts—Sale of Business—Implied Covenants—Restraint of Competition—Relevant Considerations.

   Facts which are relevant to the determination of the existence of an enduring implied covenant not to solicit the customers of a business which has been sold are: the length of time since the seller's last contact with the customers of the business, the seller's continued participation in the business after the sale, the length of time between the completion of the payment of the purchase price and the beginning of solicitation by the seller, as well as any other relevant evidence.

Appeals from Calhoun, Richard Robinson, J. Submitted December 3, 1975, at Lansing. (Docket Nos. 22410, 22411.) Decided January 7, 1976. Leave to appeal denied, 396 Mich —.

References for Points in Headnotes

[1] 38 Am Jur 2d, Good Will § 12.
[2, 3] 17 Am Jur 2d, Contracts § 109.

Complaint by the Worgess Agency, Inc., Donald R. Worgess, Grethe ·Worgess, Russell V. Worgess and Charlotte Worgess against Elmer Lane and Auto-Owners Insurance Company for damages and injunctive relief from breach of contract arising out of the sale of an insurance agency. Counterclaim by Elmer Lane against the above-named plaintiffs and against Michigan National Bank and Lorraine Traut for damages for wrongful termination from a profit sharing plan and for wrongful withholding of salary. Partial summary judgment for defendants Elmer Lane and Auto-Owners Insurance Company. Plaintiffs appeal. Reversed and remanded.

*Burwell & Shrank* and *Blaske & Blaske,* for plaintiffs.

*Allen, Worth & Hatch,* for defendant and counter-plaintiff Elmer Lane.

*Fraser, Trebilcock, Davis & Foster,* for defendant Auto-Owners Insurance Company.

Before: R. B. BURNS, P. J., and D. E. HOLBROOK and D. F. WALSH, JJ.

D. E. HOLBROOK, J. This is an appeal from orders granting two partial summary judgments in favor of defendants Elmer Lane and Auto-Owners Insurance Company. The facts were certified to this Court and are involved.

Plaintiff, Worgess Agency, Inc., has been engaged in business as an independent insurance agency in the City of Battle Creek, Michigan, for a period of approximately 35 years. One of the insurance companies plaintiff represented was defendant ·Auto-Owners Insurance Company. Defendant

Elmer Lane was the principal officer and shareholder of Elmer Lane, Inc., which was engaged in a business similar to plaintiff's and for a like number of years, also in the Battle Creek, Michigan, area. Late in 1963, the parties agreed upon a sale by Elmer Lane of his insurance agency to the Worgess Agency. To that end, a "sales agreement" was executed by the parties to become effective January 1, 1964. The sales agreement provided for the transfer of all of the common stock of Elmer Lane, Inc. and:

"1. * * * All of the assets used or useful in the business of the insurance and bonding business known as Elmer Lane, Inc., including office furniture, fixtures and equipment, and all expiration records, line records, daily reports, all other records, documents, books, writings and papers, including good will, effective as of January 1, 1964, and the good will in the name Elmer Lane, Inc., and any and all parts thereof and the right to the exclusive use thereof in all fields of insurance."

The agreement also contained a covenant not to compete which reads as follows:

"10. * * * Said seller, Elmer Lane, Inc., its officers, stockholders and Directors, Elmer Lane and Richard Lane, who join in the execution of this agreement, severally and individually, and as a material inducement to purchasers to purchase the said shares of stock, contract and covenant that for a full period of five (5) years from the date of January 1, 1964, that they will not engage either directly or indirectly, as principal or as agent on their account, either solely or jointly with others, or as stockholders in any corporation or joint stock association or partnership (except as employees of purchasers) in the business of soliciting or receiving applications for fire, casualty, plate glass, boiler, elevator, accident, health, burglary, marine, credit and life insurance, or any and all others *[sic]* kinds of insurance;

or in the collection of premiums or in the doing of such other business as may be designated as insurance business or conducting any general insurance agency in the City of Battle Creek, Michigan, or at any other place within a radius of fifty (50) miles of said City of Battle Creek, Michigan; the said covenant and stipulation shall run in favor of the heirs, successors and assigns of the purchasers, and shall be binding upon the heirs, successors, executors, administrators and assigns of the seller, and of said officers, stockholders and Directors; provided, that in case any of the foregoing restrictions may be held to be invalid, the same shall be deemed, and it is hereby agreed that the same are meant to be severable and shall not defeat the remaining provisions and covenants."

The consideration was separated and applied:

"6. * * * It is understood and agreed that the basic price hereinafter specified is understood and agreed to be the fair and reasonable value of the assets underlying the stock herein provided to be sold allocated by express agreement between the parties as follows:

"(a) For office furniture, furnishings, fixtures and equipment as agreed, the sum of $5,000.00.

"(b) For all expiration records, line records, daily reports and any and all other records, papers, documents, books and records of the corporation, including good will of said corporation, the sum of $85,000.00.

"(c) For the covenant of the said Elmer Lane, Inc., its officers and stockholders, not to compete with purchasers, its assigns or successors in any line of insurance business as hereinafter detailed, during the next five (5) years from the effective date of this agreement within a radius of fifty (50) miles of the City of Battle Creek, the sum of $40,000.00."

The agreement provided that the purchase price was payable in installments which were to extend over a period of 11 years. Finally, the agreement provided:

"9. * * * The warranties, representations and agreements set forth herein shall be continuous and shall survive the delivery by the seller and the receipt by purchasers of the capital stock to be sold hereunder, and shall survive the payment of amounts due hereunder."

At the time of sale, Elmer Lane notified the various insurance companies which had been represented by Elmer Lane, Inc. that the business had been sold and transferred to plaintiff Worgess Agency, Inc. Codefendant Auto-Owners Insurance Company was one of the companies so notified. Immediately after the sale, Worgess Agency hired Elmer Lane as its salaried solicitor. Thereafter, defendant Lane continued to serve the business of customers which had been sold to plaintiff Worgess Agency, but now did so on behalf of Worgess Agency. He continued in this capacity until the middle of 1971, a period of some 7-1/2 years. When he resigned, he was forthwith appointed as an agent of Auto-Owners Insurance Company and began to solicit the customers which had composed part of the business conveyed by the sales agreement. Plaintiffs alleged that it was a breach of the contract for defendant Lane to solicit customers whom he had transferred to Worgess Agency as part of the sale. They alleged that defendant Auto-Owners aided and abetted defendant Lane in this improper activity by providing him with certain records and names of policy holders and expiration dates which had been obtained as a result of the agency existing between Worgess Agency and Auto-Owners. Plaintiffs alleged that this personal solicitation activity on behalf of defendant Lane, aided by defendant Auto-Owners, resulted in the transfer of a substantial portion of the business written by Auto-Owners from Worgess Agency to

defendant Lane. After a substantial amount of preliminary maneuvering, the case proceeded to trial. After the opening statement of plaintiffs, defendant Lane moved for partial summary judgment on the theory that personal solicitation of customers of plaintiffs by defendant Lane was neither contrary to the sales agreement nor contrary to law. The court postponed argument on this motion and the trial proceeded with the testimony of two of plaintiffs' witnesses. When court was resumed at a later date, defendant Lane's motion was argued. The court then stated:

"I start with the assumption, our law frowns on agreement which tends to restrain trade. I think that's behind the Court's statement in the *Edelman* case *[Edelman Realty Co v Edelman,* 344 Mich 646; 75 NW2d 29 (1956)], and find and so hold in this case, that the express agreement not to compete excludes any implied restrictive covenants on competition.

"It's my opinion that at this point, Lane has a right to compete with Worgess for business including the solicitation by Lane of former customers of Lane, with these exceptions: that Lane is precluded from soliciting business from Worgess customers, which solicitation relies on records which Lane sold to Worgess and should have transferred or voided, or which solicitation relies on records or copies of records purloined from Worgess while Lane was in Worgess employ.

"We'll proceed on that basis with the proofs."

Defendant Auto-Owners then made a motion for partial summary judgment upon the same grounds, on the theory that their liability, if any, was derivative of the liability of defendant Lane. On January 31, 1974, two orders were entered granting partial summary judgments to defendants Lane and Auto-Owners Insurance Company. The order as to defendant Lane reads as follows:

"This matter having come on to be heard on the oral motion of defendant Elmer Lane by his attorneys Allen, Worth & Hatch, seeking summary judgment as to that part of the claim of plaintiffs based on contract of sale and alleging a right to damages and injunctive relief arising from direct solicitation of then customers of plaintiff Worgess Agency, Inc., who had been customers of Elmer Lane, Inc. at the time of making the contract of sale annexed to plaintiffs' complaint, on the ground that such part fails to state a claim upon which relief can be granted, and the court having heard argument from all counsel and it appearing from a review of the said contract in light of the authorities cited by counsel that such conduct of defendant Elmer Lane cannot, as a matter of law, be held to be a breach thereof or a violation of any legal duty owed by said defendant to plaintiffs or any of them;

"IT IS ORDERED AND ADJUDGED, that plaintiffs have no cause of action against defendant, Elmer Lane arising from the conduct of said defendant in resuming competition and/or in solicitation of then customers of plaintiff, Worgess Agency, Inc.

"IT IS FURTHER ORDERED that plaintiffs shall proceed with their proofs on an adjourned date to be fixed by the court on that part of their claim relating to the alleged improper and unlawful use of the business records of plaintiff Worgess Agency, Inc."

The order as to defendant Auto-Owners is substantially the same.

There can be no doubt that, under Michigan law, the sale of a business along with its accompanying good will gives rise to a covenant precluding the seller from soliciting back to himself that which he has sold. In *Colton v Duvall,* 254 Mich 346; 237 NW 48 (1931), defendant had sold his truck and trucking business along with a list of customers and the good will of the business to plaintiff. Later, defendant began soliciting freight-handling business from those who had been his

customers in the business he had sold. The Court said at p 350:

"Defendant will not be permitted to derogate from his own assignment. He is not at liberty to destroy what he transferred or depreciate what he sold. There was an implied covenant on the sale of the good will of the business by defendant that he would not solicit the custom which was paid for and parted with. It was a fraud to sell that which he did not mean the purchaser to have; to pocket the paid price and attempt to recapture the thing sold; or to solicit or attempt to decoy it away from plaintiff, or call it back to himself *before plaintiff had time to attract it to himself and make it his own.* Defendant cannot impair the value of what he sold or sell the business and its good will, take the price paid, and keep or retake the thing sold. These principles are elementary and have been repeatedly stated by the English and American courts. *Labouchere v Dawson,* LR 13 Eq 322; *Trego v Hunt,* LR 21 App Cas 7; *Suburban Ice Manfg & Cold Storage Co v Mulvihill,* 21 Ohio App 438; 153 NE 204; *Grow v Seligman,* 47 Mich 607; 41 Am Rep 737." (Emphasis added.)

Defendants urge that *Edelman Realty Co v Edelman,* 344 Mich 646; 75 NW2d 29 (1956), compels a different result here. They maintain that *Edelman* stands for the principle that an express agreement not to compete excludes any implied restrictive covenants on competition. The *Edelman* case does not stand for the proposition advocated by defendants. In *Edelman* the conduct complained of was specifically allowed by a clause in the contract; there was no question of a restrictive covenant affecting the case one way or the other. The issue presently before us, whether or not a restrictive covenant which is expressed in the contract precludes an implied covenant not to solicit from arising out of the same contract, was not before the Court in *Edelman* and not decided by it. As

can be seen from the above-quoted language from the trial court, the judge apparently adopted defendants' interpretation of the *Edelman* case. This was error. The mere fact that there existed a covenant not to *compete* has no bearing whatsoever on the existence of an implied covenant not to *solicit* the customers of a business which is sold along with its accompanying good will. The situation before us is not one wherein defendant is accused of breaching an express covenant not to compete. Rather, plaintiffs alleged that defendant Lane is attempting to improperly regain something which he sold for a fair consideration. We see from *Colton v Duvall, supra,* that a sale of a business along with its good will gives rise to an implied covenant not to overtly attempt to recapture the very thing sold. In this case there is no doubt that defendant Lane sold the good will of his business when he sold the business. There is also no doubt, as shown by the above-quoted provisions of the sales agreement, that defendant was paid a separate price in consideration for his agreement not to compete. Defendant has performed the agreement not to compete. However, this does not discharge his implied covenant not to attempt to regain that which he sold for another separate consideration; namely, the good will of the business. Whether or not that covenant is still effective cannot be answered as a matter of law as the trial court attempted to do. The covenant to refrain from soliciting back to oneself that which was sold exists for no set length of time. It is a question of fact to be determined by the trier of fact whether or not defendant refrained from solicitation for a sufficient length of time in order to allow plaintiff Worgess Agency to attract to itself and make its own that which defendant sold. In determining

this question of fact it will be relevant to consider the length of time elapsed since defendant's last contact with the customers whose patronage and loyalty constituted a large part of the good will sold. The fact that defendant continued to work for plaintiff may be considered. Also relevant to the question of the duration of the implied covenant is the fact that the entire purchase price had not yet been paid to defendant at the time he began soliciting back the customers he had sold. Of course, we do not here enumerate all of the relevant evidence which may be put before the trier of fact before a determination is made as to whether or not there is an enduring implied covenant in this case, but we do wish to emphasize that that question is one of fact and not one of law.

Therefore, the summary judgments entered below are reversed insofar as they deny plaintiff a cause of action for solicitations by defendant Lane of customers whose trade made up part of the good will of the business he had sold plaintiff. Under this ruling, suit may also proceed against the other defendant, Auto-Owners Insurance Company.

Reversed and remanded for further proceedings consistent with this opinion.