ST CLAIR MEDICAL, PC v BORGIEL

Docket No. 256217. Submitted January 11, 2006, at Detroit. Decided
    January 19, 2006. Approved for publication March 14, 2006, at
    9:10 a.m.

    St. Clair Medical, P.C., brought an action in the St. Clair Circuit
    Court against Christopher Borgiel, M.D., alleging breach of a
    covenant not to compete and seeking liquidated damages of
    $40,000 as provided in an employment contract. The defendant
    counterclaimed for a declaratory judgment that the restrictive
    covenant with the liquidated damages clause was void and unen-
    forceable. The court, Daniel J. Kelly, J., granted summary disposi-
    tion for the plaintiff, concluding that the restrictive covenant was
    enforceable, that the defendant violated the covenant by working
    within seven miles of one of the plaintiff's two offices, and that the
    liquidated damages clause was enforceable. The defendant ap-
    pealed.

        The Court of Appeals held:

        1. The circuit court did not err in concluding that the restric-
    tive covenant was unambiguous and that the defendant had
    breached it. The contract unambiguously prohibited the defendant
    from engaging in medical practice within seven miles of either one
    of the plaintiff's offices, and the defendant does not dispute that
    his new position is within seven miles of one of the plaintiff's
    offices.

        2. MCL 445.774a(1) allows an employer to obtain from an
    employee an agreement or covenant that protects the employer's
    reasonable competitive business interests and expressly prohibits
    the employee from engaging in employment or a line of business
    after termination of employment if the agreement or covenant is
    reasonable with respect to its duration, geographic area, and the
    type of employment or line of business. The restrictive covenant in
    this case protected the plaintiff from unfair competition by the
    defendant and protected a reasonable competitive business inter-
    est as required by MCL 445.774a(1). The restrictive covenant
    protected the plaintiff's reasonable competitive business interest
    in retaining patients, provided the plaintiff with time to regain

goodwill with its patients, and prevented the defendant from using patient contacts and relationships established during employment to compete with the plaintiff.

3. The geographic scope in the restrictive covenant, limiting the defendant's competition within seven miles of the plaintiff's two offices, is modest in scope and is reasonable in relation to the plaintiff's competitive business interests, including retaining patient goodwill.

4. The restrictive covenant is not unreasonable in light of the American Medical Association Principles of Medical Ethics, E-9.02, which merely reflects the common-law rule of reasonableness and states that restrictive covenants are unethical only if they are excessive in geographical scope or duration. The modest geographical restriction is not excessive and is not specially injurious to the public. Patients' choice of physician is protected by the modest geographical scope of the covenant and the liquidated damages provision.

5. The liquidated damages amount is not unconscionable or excessive. Given the difficulty of ascertaining the actual damages, the contract provision for $40,000 in liquidated damages is not excessive in relation to potential patient loss.

6. The circuit court did not err in granting summary disposition even though discovery had not closed. There was no fair likelihood that further discovery would yield support for the defendant's position. The defendant merely stated that summary disposition was premature, and he failed to identify any specific facts or independent evidence that he anticipated discovering to support his position.

Affirmed.

1. CONTRACTS — EMPLOYMENT CONTRACTS — RESTRICTIVE COVENANTS — COVENANTS NOT TO COMPETE — REASONABLE LIMITATIONS.

A covenant in an employment contract restricting an employee from competing with an employer must protect the employer's reasonable competitive business interest, must be reasonable in terms of duration, geographical scope and type of employment or line of business restricted, and must not be specially injurious to the public (MCL 445.774a[1]).

2. CONTRACTS — BREACHES OF CONTRACT — LIQUIDATED DAMAGES.

A liquidated damages provision in a contract is enforceable if the amount is reasonable with relation to the possible injury suffered and is not unconscionable or excessive; such a provision is particu-

larly appropriate where actual damages are uncertain and difficult to ascertain or are of a purely speculative nature.

*Fletcher Clark Tomlinson Fealko & Monaghan, P.C.* (by *John D. Tomlinson*), for the plaintiff.

*Williams Acosta, PLLC* (by *Victor J. Torres*), for the defendant.

Before: CAVANAGH, P.J., and HOEKSTRA and MARKEY, JJ.

PER CURIAM. Defendant appeals by right the trial court's order granting summary disposition in favor of plaintiff in this contract action involving a covenant not to compete. We affirm.

Defendant Christopher Borgiel, M.D., began working for plaintiff on October 15, 2001, and signed an employment contract that provided in relevant part:

> 1. *Employment for professional services.* The Employer hereby employs the Employee and the employee accepts such employment as a physician to perform services at Greater Yale Medical Clinic and Mitchell Medical Center.
>
> \* \* \*
>
> 7. *Restricted Covenant.* The employee shall agree not to embark on medical practice within 7 (seven) miles of either office for at least one (1) year after this Employer-Employee relationship has ended. The employee shall reimburse the corporation $40,000.00 if these terms are breached.

From October 2001 through July 2003, defendant worked almost exclusively at the Greater Yale Medical Clinic in Yale, Michigan; he also worked approximately six hours during the 20-month employment period at the Mitchell Medical Center in Port Huron, Michigan.

On June 18, 2003, defendant submitted a letter of resignation advising plaintiff that he was terminating his employment on July 2, 2003. Further, he stated his intent to work for Physician's Health Care Network in Fort Gratiot, which is located within seven miles of the Mitchell Medical Center.

Plaintiff filed a complaint alleging that defendant was in violation of the restrictive covenant and requested that defendant pay liquidated damages in the amount of $40,000 for breach of contract. Defendant filed a counterclaim for a declaratory judgment that the restrictive covenant and liquidated damages clause were void and unenforceable. Plaintiff filed a motion for summary disposition pursuant to MCR 2.116(C)(10) on its claim for breach of contract and defendant's complaint for declaratory judgment. Defendant filed a cross-motion for summary disposition pursuant to MCR 2.116(I)(2). The circuit court granted plaintiff's motion, finding that the restrictive covenant was enforceable, that defendant violated the covenant by working within seven miles of plaintiff's Port Huron office, and that the liquidated damages clause was enforceable. The court subsequently issued an order awarding plaintiff $40,000, plus interest, offset by $3,300 that plaintiff still owed defendant. The court granted defendant's motion to stay enforcement of the judgment pending appeal.

Defendant argues on appeal that the covenant did not restrict him from practicing medicine within seven miles of the Mitchell Medical Center, so he did not violate it. We disagree.

A trial court's decision on a motion for summary disposition is reviewed de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion for summary disposition under MCR 2.116(C)(10) tests the

factual sufficiency of the complaint. *Maiden, supra* at 120. The moving party must specifically identify the matters that it believes have no disputed factual issues. *Id.*; MCR 2.116(G)(4). The moving party must support its position with affidavits, depositions, admissions, or other documentary evidence. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996); MCR 2.116(G)(5). Once the moving party has met this burden, the burden shifts to the opposing party to show that a genuine issue of material fact exists. *Quinto, supra* at 362. When the burden of proof at trial falls on the party opposing the motion, that party may not rest on mere allegations or denials in the pleadings, but must, by documentary evidence, set forth specific facts to show that there is a genuine issue for trial. *Id.*; *Maiden, supra* at 121.

The construction and interpretation of a contract present questions of law that we review de novo. *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999). The goal of contract construction is to determine and enforce the parties' intent on the basis of the plain language of the contract itself. *Old Kent Bank v Sobczak*, 243 Mich App 57, 63; 620 NW2d 663 (2000). "It is axiomatic that if a word or phrase is unambiguous and no reasonable person could differ with respect to application of the term or phrase to undisputed material facts, then the court should grant summary disposition to the proper party pursuant to MCR 2.116(C)(10)." *Henderson, supra* at 353. "Conversely, if reasonable minds could disagree about the conclusions to be drawn from the facts, a question for the factfinder exists." *Id.*

Here, the contract unambiguously prohibited defendant from engaging in medical practice within seven miles of either the Yale Medical Clinic or the Mitchell

Medical Center. Defendant's effort to read the covenant to prohibit the practice of medicine within seven miles of a clinic where he actually provided the majority of his services is unconvincing. The clause clearly prohibits practice within seven miles of either clinic, without regard to where the services were performed. Moreover, defendant readily admits that he provided limited services at the Mitchell Medical Center, and defendant does not dispute that his new position is within seven miles of the Mitchell Medical Center. Thus, the trial court did not err when it concluded that the contract was unambiguous and defendant had breached it.

Next, defendant argues that the covenant not to compete is unreasonable and violates the Michigan Antitrust Reform Act (MARA), MCL 445.771 *et seq*. We disagree.

"A contract ... between 2 or more persons in restraint of, or to monopolize, trade or commerce in a relevant market is unlawful." MCL 445.772. But, agreements not to compete are authorized by § 4a(1) of the MARA, MCL 445.774a(1), which provides:

> An employer may obtain from an employee an agreement or covenant which protects an employer's reasonable competitive business interests and expressly prohibits an employee from engaging in employment or a line of business after termination of employment if the agreement or covenant is reasonable as to its duration, geographical area, and the type of employment or line of business. To the extent any such agreement or covenant is found to be unreasonable in any respect, a court may limit the agreement in order to render it reasonable in light of the circumstances in which it was made and specifically enforce the agreement as limited.

This Court recently concluded that § 4a(1) represents a codification of the common-law rule "that the enforceability of noncompetition agreements depends on their

reasonableness." *Bristol Window and Door, Inc v Hoogenstyn,* 250 Mich App 478, 495; 650 NW2d 670 (2002).

> At common law, a covenant not to compete was enforceable if it met four standards established by *Hubbard v Miller,* 27 Mich 15, 19; 15 Am Rep 153 (1873). First, the covenant must be for an honest and just purpose. Second, it must be established for the protection of the legitimate interest of the party in whose favor it is imposed. Third, it must be reasonable as between the parties to the contract. Finally, it must not be specially injurious to the public. *Id.* [*Cardiology Assoc of Southwestern Michigan, PC v Zencka,* 155 Mich App 632, 636; 400 NW2d 606 (1985).]

Thus, a restrictive covenant must protect an employer's reasonable competitive business interests, but its protection in terms of duration, geographical scope, and the type of employment or line of business must be reasonable. Additionally, a restrictive covenant must be reasonable as between the parties, and it must not be specially injurious to the public.

Because the prohibition on all competition is in restraint of trade, an employer's business interest justifying a restrictive covenant must be greater than merely preventing competition. *United Rentals (North America), Inc v Keizer,* 202 F Supp 2d 727, 740 (WD Mich, 2002). To be reasonable in relation to an employer's competitive business interest, a restrictive covenant must protect against the employee's gaining some unfair advantage in competition with the employer, but not prohibit the employee from using general knowledge or skill. *Id.; Follmer, Rudzewicz & Co, PC v Kosco,* 420 Mich 394, 402-404, 362 NW2d 676 (1984). In a medical setting, a restrictive covenant can protect against unfair competition by preventing the loss of patients to departing physicians, protecting an employer's investment in specialized training of a physician, or protecting an employer's confidential busi-

ness information or patient lists. *Community Hosp Group, Inc v More*, 183 NJ 36, 58; 869 A 2d 884 (2005); Berg, *Judicial enforcement of covenants not to compete between physicians: Protecting doctors' interests at patients' expense*, 45 Rutgers L R 1, 17-18 (1992).

We agree with defendant that material issues of fact remain regarding whether the covenant was protecting plaintiff's confidential patient lists and business information or plaintiff's investment in defendant's training. The lower court record is contradictory regarding whether defendant had access to confidential business information or patient lists. Plaintiff suggested that defendant had access to confidential information; however, defendant averred that during the course of his employment he was "unaware of potentially confidential information concerning operation of St. Clair Medical as a business such as patient lists, price lists, or the existence or content of any other possibly confidential business information." Accordingly, there are issues of disputed fact regarding whether plaintiff was protecting itself from defendant's use of confidential information or patient lists. Plaintiff also asserted that it "expended substantial resources in training [defendant] to be a successful practitioner, including providing casual advice from other more experienced physicians, access to professional training and seminars, and working knowledge of how a successful practice is run on a day-to-day basis." In *Follmer*, our Supreme Court concluded that " 'general knowledge, skill, or facility acquired through training or experience . . . acquired or developed during the employment does not, by itself, give the employer a sufficient interest to support a restraining covenant . . . .' " *Follmer, supra* at 402 n 4, quoting Blake, *Employment agreements not to compete,* 73 Harv L R 625, 652 (1960). Here, plaintiff has failed to offer any evidence indicating that defendant benefited

from specialized training that he could then use to unfairly compete with plaintiff. Accordingly, we also conclude that there are disputed issues of fact regarding whether plaintiff provided defendant anything other than general training and experience.

We conclude, nevertheless, that the restrictive covenant was protecting plaintiff's competitive business interest in retaining patients, that it provided plaintiff with time to regain goodwill with its patients, and that it prevented defendant from using patient contacts gained during the course of his employment to unfair advantage in competition with plaintiff. A physician who establishes patient contacts and relationships as the result of the goodwill of his employer's medical practice is in a position to unfairly appropriate that goodwill and thus unfairly compete with a former employer upon departure. See *Weber v Tillman*, 259 Kan 457, 467-469; 913 P2d 84 (1996); Berg, *supra* at 17-18. This risk of unfair competition in this context does not result from access to patient lists, but from the risk that patients will seek to follow a departing physician. Where the physician-patient relationship was facilitated by a physician's association with his employer or resulted from advertising dollars expended by that employer, a physician can unfairly take advantage of the employer's investments in advertising and goodwill when competing with the former employer to retain patients. Here, plaintiff operated clinics located in the cities of Yale, St. Clair, and Port Huron, which drew patients residing throughout St. Clair County. Plaintiff expended funds to advertise its services in these cities. Defendant practiced medicine for plaintiff for approximately 20 months and took advantage of plaintiff's goodwill in the community and advertising expenditures to attract patients. We conclude that the covenant protected plaintiff from unfair competition by defen-

dant and therefore protected a reasonable competitive business interest as required by MCL 445.774a(1).

Defendant next argues that the restrictive covenant is unenforceable because the geographic restriction is unreasonable in relation to plaintiff's competitive interest, i.e., defendant provided the overwhelming majority of his services at the clinic that was more than twenty miles from the location of his new employment. We conclude that the restrictive covenant is modest in geographical scope and is not unreasonable in relation to plaintiff's competitive business interests. The principal shareholder and president of plaintiff corporation stated, "When [defendant] was hired by St. Clair Medical, it was anticipated that he would see patients at both the Greater Yale Medical Clinic and the Mitchell Medical Center." Although defendant worked primarily at one location, there is no evidence that his patients were only drawn from within seven miles of that location. Plaintiff's clinics drew patients residing throughout St. Clair County. Indeed, since defendant's departure, some patients previously scheduled for plaintiff's Yale office have visited plaintiff's Port Huron office. We conclude that a prohibition on practice extending for seven miles around two of plaintiff's offices where it was anticipated that defendant would work is not unreasonable and protects plaintiff's interest in retaining patient goodwill.

Defendant also argues that the covenant is unreasonable in light of the Principles of Medical Ethics issued by the American Medical Association, which provide:

> Covenants-not-to-compete restrict competition, disrupt continuity of care, and potentially deprive the public of medical services. The Council on Ethical and Judicial Affairs discourages any agreement which restricts the right of a physician to practice medicine for a specified period of time or in a specified area upon termination of an employ-

ment, partnership, or corporate agreement. Restrictive covenants are unethical if they are excessive in geographic scope or duration in the circumstances presented, or if they fail to make reasonable accommodation of patients' choice of physician. [AMA, E-9.02: *Restrictive Covenants and the Practice of Medicine.*]

We conclude that this standard merely reflects the common-law rule of reasonableness and states that restrictive covenants are unethical only if they are excessive in geographical scope or duration. As previously concluded, this restrictive covenant is not excessive in geographical scope. Defendant does not challenge its duration. Moreover, patients' choice of physician is protected by the modest geographical scope of the covenant and the liquidated damages clause. Finally, this modest geographical restriction is not specially injurious to the public. Cf. *Community Hosp*, *supra* at 61-62 (concluding that a restrictive covenant covering a 30-mile radius is injurious to the public where it would prohibit a neurosurgeon from practicing in an area were there was a shortage of neurosurgeons). Here, defendant can continue patient relationships by merely practicing outside a modest geographic restriction or by practicing within the restricted area and simply paying the liquidated damages provided for in the contract.

Next, defendant argues that the liquidated damages clause bears no reasonable relationship to the actual damages plaintiff suffered and is an unconscionable windfall. We disagree. The issue whether a liquidated damages provision is valid and enforceable is a matter of law that this Court reviews de novo. *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 508; 579 NW2d 411 (1998). A liquidated damages provision is simply an agreement by the parties fixing the amount of damages in the event of a

breach and is enforceable if the amount is reasonable with relation to the possible injury suffered and not unconscionable or excessive. *Id.* Such a provision is particularly appropriate "where actual damages are uncertain and difficult to ascertain or are of a purely speculative nature . . . ." *Papo v Aglo Restaurants of San Jose, Inc,* 149 Mich App 285, 294; 386 NW2d 177 (1986). Here, we conclude that the amount of damages is reasonable in relation to the possible injury suffered. Plaintiff stated that the clause was included in the contract because damages associated with a physician's departure are difficult to calculate. Accordingly, a liquidated damages provision is particularly appropriate. The $40,000 in liquidated damages does not strike this Court as unconscionable or excessive in relation to potential patient loss; consequently, the trial court did not err in enforcing the parties' agreement.

Next, defendant argues that summary disposition was prematurely granted. We disagree. A motion for summary disposition under MCR 2.116(C)(10) is premature if discovery has not closed, unless there is no fair likelihood that further discovery would yield support for the nonmoving party's position. *Ensink v Mecosta Co Gen Hosp,* 262 Mich App 518, 540; 687 NW2d 143 (2004). A party opposing summary disposition cannot simply state that summary disposition is premature without identifying a disputed issue and supporting that issue with independent evidence. *Hyde v Univ of Michigan Bd of Regents,* 226 Mich App 511, 519; 575 NW2d 36 (1997). Here, defendant did no more than state the position that discovery should be extended if the trial court disagreed with him, but failed to identify any specific facts or independent evidence that he anticipated discovering to support his position. Accordingly, we conclude that summary disposition was not prematurely granted.

Finally, defendant argues that the trial court inappropriately premised its conclusion on this issue on erroneous findings of fact. Defendant's arguments in this regard merely challenge conclusions of law already addressed by this Court and, thus, have no merit.

We affirm.