# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3896

_____

| | | |
|---|---|---|
| Guardian Fiberglass, Inc., a Delaware corporation; Guardian Fiberglass Service Corporation, a Delaware corporation, | * * * * * | |
| Appellants, | * * | |
| v. | * * * | Appeal from the United States District Court for the Eastern District of Arkansas. |
| Whit Davis Lumber Company, an Arkansas corporation, | * * * | |
| Appellee. | * | |

_____

Submitted: September 27, 2007
Filed: December 12, 2007

_____

Before MURPHY, MELLOY, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Guardian Fiberglass, Inc. and Guardian Fiberglass Service Corp. (collectively referred to as "Guardian") sued Whit Davis Lumber Company ("Whit Davis") to enforce a restrictive covenant. The district court[1] granted Whit Davis's motion for summary judgment, finding that Guardian was unable to demonstrate a legitimate

_____

[1]The Honorable G. Thomas Eisele, United States District Judge for the Eastern District of Arkansas.

business interest to justify its restrictive covenant and that the covenant was overbroad. We affirm.

## I. *Background*

Guardian is a national manufacturer and distributor of fiberglass insulation products. Whit Davis operates two lumber yards and retail stores in central Arkansas. Prior to its relationship with Guardian, Whit Davis sold insulation but did not sell insulation services to its client base of builders.

Guardian ranks fourth in the national market for insulation product sales. Guardian implemented its "Dealer Installed Insulation Program" (DIIP) to enhance its market share. The program targeted lumber yards, including Whit Davis, that sold insulation at retail. Through the DIIP, Guardian assisted the lumber yards in becoming insulation installers. To better market the program, Guardian provided a notebook containing extensive information about installed insulation sales, including an analysis of the fiberglass insulation market and Guardian's products. The notebook also informed potential program participants of recommended trucks and equipment, staffing, compensation and incentive programs, as well as a list of current dealers. Guardian gave this notebook to Whit Davis as it reviewed the program, and Guardian placed no restrictions on the use of the notebook.

Guardian's competitors also courted Whit Davis, but Whit Davis chose Guardian based on the strength of Guardian's program. Guardian and Whit Davis entered into a trial relationship in March 1998. The trial period went well, and the parties signed a three-year agreement in 1999. Under the terms of the agreement, Whit Davis agreed to exclusively purchase Guardian fiberglass insulation products.

The agreement included a covenant not to compete if Whit Davis terminated the agreement before the end of the term. Although the agreement had a three-year term, at expiration, the agreement would automatically renew for an additional term unless

one of the parties chose to terminate it. The agreement could be terminated with ninety days notice, but if Whit Davis exercised its right to terminate, the covenant not to compete would be triggered. Under the covenant, Whit Davis, along with its officers, directors, shareholders, partners, owners, principals, and other affiliates, agreed not to provide installation services or own, manage, operate, assist, train or advise any person or entity that provides installation services for a period of two years. If Guardian terminated the agreement, the covenant did not apply.

The parties performed under the agreement from 1998 until 2004 without significant controversy. In fact, Whit Davis purchased approximately $2.2 million of insulation products from Guardian under the agreement. However, in mid-January 2004, Whit Davis began purchasing additional insulation products from Johns Mansville, one of Guardian's major competitors. Whit Davis continued to purchase insulation products from Guardian until March 2004 when Guardian refused to sell any more product to Whit Davis.

Guardian then sued Whit Davis in the United States District Court for the Western District of Michigan for breach of contract and sought enforcement of the non-compete covenant. The Michigan court transferred the case to the Eastern District of Arkansas because the Michigan court determined that it did not have personal jurisdiction over Whit Davis.

Guardian sought a preliminary injunction, which the court denied. The court doubted whether Guardian could justify its no-competition covenant with a legitimate business interest. Subsequently, Whit Davis moved for summary judgment. Guardian filed a counter motion for summary judgment contending that no fact dispute existed as to whether Whit Davis breached the agreement. The court granted Whit Davis partial summary judgment declaring the restrictive covenant unenforceable because Guardian lacked a legitimate business interest. The court also granted partial summary judgment to Guardian finding that Whit Davis was in breach of contract.

## II. *Discussion*

### A. *Choice of Law*

Federal district courts sitting in diversity, as the district court in this case, must apply the forum state's substantive law, including its conflict of law rules. *Nesladek v. Ford Motor Co.*, 46 F.3d 734, 736 (8th Cir. 1995). Therefore, Arkansas substantive law applies. However, the parties' contract included a choice of law provision that declared that Michigan law governed all questions regarding the validity, construction, enforcement of, and the remedies under the agreement. Arkansas courts will honor a choice of law provision, "provided that the law selected is reasonably related to the transaction and does not violate a fundamental public policy of the state." Arkansas Civil Practice and Procedure § 6:7 (citing *Nursing Home Consultants, Inc. v. Quantum Health Servs., Inc.*, 926 F.Supp. 835 (E.D. Ark. 1996)); *see also Southern Farm Bureau Cas. Ins. Co. v. Craven*, 89 S.W.3d 369, 372–73 (Ark. Ct. App. 2002).

Michigan law has a reasonable relationship to this business transaction—Guardian is based out of Michigan, and its DIIP was administered from that state. Further, application of Michigan law on this issue would not violate a fundamental public policy of Arkansas. Therefore Michigan law governs.

### B. *Legitimate Business Interest*

We review de novo the district court's grant of summary judgment. *Palmer v. Arkansas Council on Econ. Educ.*, 154 F.3d 892, 895 (8th Cir. 1998). Summary judgment is appropriate when a party can demonstrate that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *JN Exploration & Production v. Western Gas Resources, Inc.*, 153 F.3d 906, 909 (8th Cir. 1998). "When reviewing a grant or denial of summary judgment, this Court considers the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor." *Mettler v. Whitledge*, 165 F.3d 1197, 1200 (8th Cir. 1999).

Under Michigan law, a covenant will be upheld provided that the covenant is reasonable. *See St. Clair Medical, P.C. v. Borgiel*, 715 N.W.2d 914, 918 (Mich. 2006). To be reasonable, the covenant must protect a legitimate business interest, and the duration, geographic area, and scope of the prohibition must be reasonable. *Id*. at 918–19. Guardian's covenant forbids competitive conduct and is thus in restraint of trade. *See* Minn. Stat. Ann. § 325D.53(1) (prohibiting unreasonable restraints on trade including "[a] contract, combination, or conspiracy between two or more persons in competition").

Because Guardian's covenant operates in restraint of trade, Guardian's business interest justifying the covenant must be greater than merely preventing competition. *St. Clair Medical*, 715 N.W.2d at 919. Whether a party has a legitimate business interest is a question of law to be decided by the court. *See e.g. Woodward v. Cadillac Overall Supply Co.*, 240 N.W.2d 710, 714 (Mich. 1976) (stating the balancing test Michigan courts use to determine whether a restrictive covenant is reasonable).The district court held that Guardian failed to demonstrate a legitimate business interest and therefore granted summary judgment to Whit Davis, concluding that the covenant was unenforceable. On appeal, Guardian argues that the district court erroneously granted summary judgment based upon disputed facts. We disagree.

Covenants not to compete commonly appear in employment contracts, sales of businesses, and franchise agreements. They are generally justified as effective means for: (1) protecting the goodwill in a business that was recently sold; (2) protecting a franchisor's goodwill in the franchise; or (3) protecting an employer from unfair competition from a previous employee. *See Worgess Agency, Inc. v. Lane*, 239 N.W.2d 417, 421–22 (Mich. 1976) (dealing with a covenant not to compete in relation to the sale of a business); *H & R Block Tax Servs., Inc. v. Circle A Enter.*, 693 N.W.2d 548, 557 (Neb. 2005) (concerning a covenant not to compete in a franchise agreement); *St. Clair Medical,* 715 N.W.2d at 920 (discussing the risk of unfair

competition in employment contracts); *see also* Franchise and Distribution law and Practice § 8:56 (discussing the franchisor's protectable interest in the franchise).

The business relationship between Guardian and Whit Davis differs from that seen in many covenant-not-to-compete cases. Guardian and Whit Davis are sophisticated commercial entities with bargaining power parity. Nevertheless, Guardian's obligation to demonstrate a legitimate business interest remains. Such an interest can be demonstrated by a showing that the covenant is necessary to protect the goodwill of its business or to prevent unfair competition by Whit Davis. *See Worgess Agency*, 239 N.W.2d at 421–22; *H & R Block Tax Servs.*, 693 N.W.2d at 557; *St. Clair Medical*, 715 N.W.2d at 920.

We hold that Guardian cannot show that the covenant serves either purpose; therefore, the district court did not err in determining that Guardian did not have a legitimate business interest to protect the covenant. Guardian cannot show that its covenant is justified by a need to protect its goodwill. Guardian was not selling its assets or its goodwill to Whit Davis. Under the terms of the agreement, Whit Davis was expected to attract business clients using knowledge of the industry obtained from Guardian without using the Guardian name. In fact, Guardian relied on Whit Davis's retail business success to ensure the success of this venture.

Whit Davis received training from Guardian regarding the successful management of a fiberglass installation business. Guardian, in turn, benefitted from the exclusivity clause that required Whit Davis to use only Guardian products for its installations. Barring Whit Davis from conducting installation business for two years does nothing to protect Guardian's goodwill. The record does not show that Whit Davis ever used the Guardian name to promote its business. Consequently, there is no risk to the Guardian name if Whit Davis continues to install fiberglass insulation under its own name.

Guardian also cannot show that its covenant is necessary to protect it from unfair competition by Whit Davis. To prove that there is a risk of unfair competition, Guardian must show that it has entrusted to Whit Davis a trade secret, permitted close contact with Guardian customers, or provided some other confidential information that would give Whit Davis an unfair competitive advantage in the marketplace. *See St. Clair Medical*, 715 N.W.2d at 919 (finding a risk of unfair competition where an employer sought to retain customers that were brought into the business by virtue of advertising dollars or marketing funds spent by the employer); *Woodward*, 240 N.W.2d at 721 (recognizing a legitimate need to protect an employee from disclosing an employer's trade secrets or other confidential information to a competitor).

As proof of the confidential information provided to Whit Davis, Guardian contends that it provided Whit Davis "a business in a box." Construing the facts in the light most favorable to Guardian, the general business knowledge Guardian provided to Whit Davis is insufficient to support the covenant. The knowledge provided by Guardian amounts to ordinary knowledge, and Michigan courts have said that an agreement that merely prohibits an employee from exercising the use of general knowledge or a skill is invalid. *St. Clair Medical*, 715 N.W.2d at 919. Guardian argues that because Whit Davis was licensed to use the name of the Guardian Ultra Fit® system, it shared confidential information. However, this permission would be necessary for anyone seeking to install a Guardian product. The information Guardian provided to Whit Davis is more analogous to general information obtained through on the job training than to confidential information or trade secrets. The information provided to Whit Davis, while helpful in establishing the business, would not give Whit Davis an unfair competitive advantage.

Because Guardian cannot show that the covenant is necessary to protect its goodwill or to prevent Whit Davis from engaging in unfair competition, Guardian is unable to demonstrate a legitimate business interest justifying the restrictive covenant.

The district court did not err in finding the covenant unenforceable given Guardian's failure of proof.

## C. *Scope of the Restrictive Covenant*

Whit Davis also argues that the covenant is not enforceable because the covenant is overly broad. Because we have determined that Guardian does not have a legitimate business interest to protect, we need not address this issue.

## III. *Conclusion*

Accordingly, we affirm the district court's grant of summary judgment.

_____