# STATE OF MICHIGAN

# COURT OF APPEALS

MILDRED JONES, Personal Representative of the ESTATE OF AMOS JONES,

Plaintiff-Appellant/Cross-Appellee,

v

BOTSFORD CONTINUING CARE CORPORATION,

Defendant-Appellee/Cross-Appellant,

and

DR. THOMAS SELZNICK and LIVONIA FAMILY PHYSICIANS, PC,

Defendants-Appellees.

FOR PUBLICATION
April 7, 2015

No. 317573
Oakland Circuit Court
LC No. 2012-130023-NH

Before: DONOFRIO, P.J., and FORT HOOD and SHAPIRO, JJ.

DONOFRIO, P.J. (*concurring in part and dissenting in part*).

I concur with the result reached by the majority with respect to the reversal of the grant of summary disposition on plaintiff's nursing malpractice claim. But because plaintiff's attorney could not have held a reasonable belief that his expert matched the necessary qualifications to render testimony on the standard of care with respect to defendant Dr. Thomas Selznick, I would affirm the grant of summary disposition on the physician malpractice claims.

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Allen v Bloomfield Hills Sch Dist*, 281 Mich App 49, 52; 760 NW2d 811 (2008). A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Weisman v US Blades, Inc*, 217 Mich App 565, 566; 552 NW2d 484 (1996). When deciding a motion for summary disposition under this subrule, a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence then filed in the action or submitted by the parties in a light most favorable to the nonmoving party. MCR 2.116(G)(5); *Wilson v Alpena Co Rd Comm'n*, 474 Mich 161, 166; 713 NW2d 717 (2006). The motion is properly granted if the evidence fails to establish a genuine issue regarding any material fact and the moving party is

-1-

entitled to judgment as a matter of law. *Michalski v Bar-Leav*, 463 Mich 723, 730; 625 NW2d 754 (2001).

Additionally, questions of statutory interpretation and court rule interpretation also are reviewed de novo. *Ligons v Crittenton Hosp*, 490 Mich 61, 70; 803 NW2d 271 (2011). Further, whether a plaintiff's affidavit of merit complied with the requirements of MCL 600.2912d is reviewed de novo as a question of law. *Lucas v Awaad*, 299 Mich App 345, 377; 830 NW2d 141 (2013).

## I. NURSING MALPRACTICE CLAIM

I concur with the majority that the trial court erred in granting summary disposition with respect to the nursing malpractice claim. But because this issue can be decided solely on the basis of defendant Botsford Continuing Care (BCC) not supporting its motion for summary disposition with documentary evidence, I do not join in the majority's discussion related to whether plaintiff's counsel held a reasonable belief that an RN can provide testimony on the standard of care for an LPN.

When moving for summary disposition under MCR 2.116(C)(10), " '[t]he moving party must support its position with affidavits, depositions, admissions, or other documentary evidence.' " *Karaus v Bank of New York Mellon*, 300 Mich App 9, 17; 831 NW2d 897 (2012), quoting *St Clair Med, PC v Borgiel*, 270 Mich App 260, 264; 715 NW2d 914 (2006). As described by the majority, BCC's sole piece of evidence on who reinserted the PEG tube was in the form of a largely indecipherable nursing log. The "LPN" notation in the nursing notes, which BCC relies on, was not written where it states that the PEG tube was replaced. Instead, the person who signed the log after the "PEG tube replaced" notation, in fact, did not have "LPN" along with the signature.[1] Looking at these notes in a light most favorable to the nonmoving party, MCR 2.116(G)(5); *Wilson*, 474 Mich at 166, there is a question of fact regarding whether an RN or an LPN reinserted the PEG tube, and summary disposition was not appropriate.

Moreover, with the sheer lack of information available to plaintiff's counsel at the time, one cannot conclude that counsel acted unreasonably in thinking that an RN was the one who replaced the PEG tube. This is true especially when considering that the person who signed the notation, "PEG tube replaced," was not the same person who signed earlier with the "LPN" designation.

Consequently, the trial court erred in granting BCC's motion on this claim. Because the issue is resolved on the two bases I describe, I do not join in the discussion that the majority engages in related to how the plaintiff's attorney's belief that his legal conclusion that an RN may offer testimony on the standard of care for an LPN was reasonable. See *Dessart v Burak*, 252 Mich App 490, 496 n 5; 652 NW2d 669 (2002) (stating that obiter dictum is a judicial comment that is not necessary to the decision and is not precedential).

---

[1] Plus, the signature does not resemble the signature earlier where the "LPN" notation is located.

## II. PHYSICIAN MALPRACTICE CLAIMS

Because I do not believe that plaintiff's attorney's belief was reasonable with respect to Dr. Gregory A. Compton possessing the relevant board certifications, I respectfully disagree with the majority's holding with respect to the sufficiency of that affidavit. Accordingly, I would affirm the trial court's grant of summary disposition on the physician malpractice claims.

"MCL 600.2912d(1) provides that the plaintiff in a medical malpractice action must file with the complaint 'an affidavit of merit signed by a health professional who the plaintiff's attorney reasonably believes meets the requirements of an expert witness under [MCL 600.2169.'" *Id.* MCL 600.2169(1)(a), in turn, provides the following:

> (1) In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:

> (a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.

Our Supreme Court's holdings in *Halloran v Bhan*, 470 Mich 572; 683 NW2d 129 (2004), and *Woodard v Custer*, 476 Mich 545; 719 NW2d 842 (2006), require an expert to possess the same one relevant specialty as possessed by the defendant. In *Halloran*, the facts were very similar to the facts in the present case. In *Halloran*, the question was whether a physician who was board certified in anesthesiology and had a certificate of added qualification in critical care medicine could testify against defendant, who was board certified in internal medicine and had a certificate of added qualification in critical care medicine. Hence, at first blush, as in our case, the two physicians in *Halloran* shared subspecialties but not specialties.[2] The Supreme Court, however, held that the proposed witness could not testify against the defendant physician. *Halloran*, 470 Mich at 578. The Court reasoned that because the physicians did not share the same board certification, the expert could not testify at trial. *Id.* at 579.

Two years later, the Supreme Court decided *Woodard*. In *Woodard*, the Supreme Court held that plaintiff's proposed witness, who was board certified in pediatrics, could not testify on the standard of care against the defendant, who was board certified in pediatrics but also possessed a certificate of special qualification in pediatric critical care medicine. *Woodard*, 476 Mich at 577. The Court explained that "a subspecialty is a specialty within the meaning of § 2169(1)(a)." *Id.* at 566 n 12. This is the first time this concept was enunciated because in

---

[2] As discussed, *infra*, this is not the case, however.

*Halloran*, 470 Mich at 575, the Court apparently accepted the parties' position that a subspecialty certification did not qualify as a "board certification" under the statute. Thus, contrary to *Halloran*, "if a defendant physician has received a certificate of special qualifications, the plaintiff's expert witness must have obtained *the same* certificate of special qualifications in order to be qualified to testify under § 2169(1)(a)." *Woodard*, 476 Mich at 565 (emphasis added).

In ruling that Dr. Compton and Dr. Selznick were "both board certified in the one most relevant specialty, i.e., geriatric medicine," the majority is making an error. Dr. Compton was board certified in internal medicine and possessed a certificate of added qualification of geriatrics. Dr. Selznick was board certified in family medicine and had a certificate of added qualification in geriatrics. But just because their board certifications in their subspecialties shared the common word of "geriatrics," it does not mean that those certifications are equivalent.[3]

As the Supreme Court in *Woodard* explained, "[A] subspecialty is a particular branch of medicine or surgery in which one can potentially become board certified that *falls under a specialty or within the hierarchy of that specialty*. A subspecialty, although *a more particularized specialty*, is nevertheless a specialty." *Id.* at 562 (emphasis added). Thus, because subspecialties "fall[] under" a particular specialty or are "within the hierarchy" of a particular specialty, it is clear that subspecialties cannot be divorced from their parent specialties. In other words, it is technically inaccurate to simply state that a doctor possesses a subspecialty board certification in "geriatrics." Instead, that doctor possesses a subspecialty board certification in "geriatrics in the field of family medicine." Hence, Dr. Compton's board certification of "geriatrics in the field of internal medicine" is not the same as Dr. Selznick's board certification of "geriatrics in the field of family medicine."[4] As a result, under MCL

---

[3] The majority claims that "Dr. Selznick now asserts that his only specialty is in family medicine and that he is not a specialist in geriatric medicine." The basis for this claim is unknown because Dr. Selznick clearly states in his brief on appeal, as he does on his web page, that he is board certified in family medicine "with an added qualification in geriatrics." Likewise, Dr. Selznick never asserted that his CAQ in geriatrics was not the equivalent of a board certification. Indeed, he admits that the CAQ was issued by the American Osteopathic Board of Family Medicine, i.e., it was board certified.

[4] If the majority's view were correct, then, regardless of how dissimilar the parent specialties were, a doctor could testify against a defendant as long as their subspecialties shared the same name or label. Hypothetically speaking, if the American Board of Dermatology created a subspecialty of "Geriatrics" (it does not currently exist), then a dermatologist who was certified in that subspecialty could testify against defendant because the subspecialties are the "same." I do not believe that is what the statute permits. Although the discrepancy in the instant case (family medicine vs. internal medicine) is not as stark as the difference in the dermatologist example, the difference is still fatal because the statute requires no difference. See *Woodard*, 476 Mich at 562.

-4-

600.2169(1)(a), Dr. Compton was not qualified to testify to the standard of care at trial against Dr. Selznick. See *id.* at 565.

However, that is not the end of the analysis because MCL 600.2912d(1) only requires that a plaintiff's attorney have a "reasonable belief" that an expert who writes an affidavit of merit meets the requirements for an expert witness. *Grossman v Brown*, 470 Mich 593, 598-599; 685 NW2d 198 (2004). This is a lesser standard than is required to have that expert testify at trial. *Id.* at 599. In determining the reasonableness of plaintiff's attorney's belief, a court must look to the resources available to the attorney at the time the affidavit of merit was prepared. See *id.* at 599-600.

In his response to defendant's motion for summary disposition, plaintiff counsel argued that his belief was reasonable based on a review of Dr. Selznick's employer's website. As the majority notes, the preamble or introductory text on the web page states in general terms that Dr. Selznick was "Board Certified in Family Practice, Geriatrics and Medical Directorship of Long Term Care Facilities." However, lower on that same web page, it provides a heading in bold type, called "Board Certifications," and under that heading is listed the specific board certifications Dr. Selznick possessed and the years he acquired them. Relevant to this discussion, it lists "AOBFP: 1991" and "AOBFP – CAQ Geriatrics: 1992." Thus, while the general text on the web page did not make it clear that the geriatrics certification was actually a subspecialty of family medicine, the "CAQ" notation, which stands for "certificates of added qualifications," makes certain that this certification was in relation to a narrower *subspecialty*.[5] *Woodard*, 476 Mich at 562. Thus, with AOBFP standing for the American Osteopathic Board of Family Physicians, it is clear that Dr. Selznick's board certification was in family medicine and that he also possessed a certification in the *subspecialty* of geriatrics *in the field of family medicine*. Thus, I would conclude that looking at the website as a whole, it is apparent that plaintiff's attorney needed an expert who was board certified in geriatrics in the field of family medicine. As a result, I do not believe that plaintiff's counsel held a reasonable belief that Dr. Compton, who was known to be board certified in geriatrics the field of internal medicine, matched Dr. Selznick's relevant board certification of geriatrics in the field of family medicine. Therefore, although the trial court never addressed the "reasonable belief" aspect of this issue, I would conclude that the trial court's ruling was correct, albeit with an incomplete analysis. See *Gleason v Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003) ("A trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason.)".

To the extent that plaintiff and the majority rely on the fact that defendants similarly provided the wrong expert when they later supplied their affidavit of meritorious defense, this fact is irrelevant. Defense counsel's later unreasonableness cannot transform plaintiff's counsel's prior unreasonableness into being reasonable. In more familiar terms, "Two wrongs do not make a right." And more importantly, plaintiff's counsel did not have access to

---

[5] At oral argument, plaintiff even conceded that a certificate of added qualification is synonymous with a *sub*specialty.

defendants' affidavit of meritorious defense at the time the affidavit of merit was filed, so any reliance on that later-issued affidavit is misplaced. See *Grossman*, 470 Mich at 599-600.[6]

### III.  AMENDMENT OF AFFIDAVITS

Plaintiff also contends that, even if any affidavit of merit were defective, she should be allowed to "amend" them by submitting new ones signed by the appropriately credentialed professionals.  The majority did not need to address this issue because it was moot given the disposition of the case.  However, because I would conclude that Dr. Compton's affidavit of merit was deficient, I will briefly address the issue.

MCR 2.112(L)(2)(b) provides that "[a]n affidavit of merit . . . may be amended in accordance with the terms and conditions set forth in MCR 2.118 and MCL 600.2301."  MCR 2.118(A)(2) provides that "a party may amend a pleading *only by leave of the court* or by written consent of the adverse party."  (Emphasis added.)  While an affidavit of merit is not a "pleading" under MCR 2.110(A), MCR 2.118(D) does allow an affidavit of merit to be amended and that such an amendment relates back to the date of the original filing of the affidavit.

Plaintiff alleges that the trial court "dropped the ball" by failing to even address this issue.  However, any failure by the trial court to address any amendments was reasonable because it appears that plaintiff never took the trial court up on its offer to pursue such a remedy.  A review of the lower court record reveals no motions by plaintiff to amend the affidavit.  At best, in her response to defendants' motions for summary disposition, plaintiff cited the law that allows affidavits of merit to be amended, but she *never actually moved the trial court to make such an amendment*.  At the hearing on defendants' motions for summary disposition, the following exchange illustrates how the trial court allowed plaintiff to take any further action she deemed prudent:

> *THE COURT:*  Okay.  So the Court is going to grant defendant's motion for Summary Disposition pursuant to [MCR 2.116(C)(10)] as to all claims against Defendant Selznick, Livonia Family Physicians, and Botsford Continuing Care Corporation.

---

[6] I also note that the majority's reliance on the supposed lack of any responses to plaintiff's notice of intent is not persuasive.  First, because the notice of intent and the responses are all conducted before a complaint is filed, they are not filed in the lower court, and without any affidavits on this topic, it is impossible to discern exactly what was sent and received.  Second, to the extent that the majority asserts that plaintiff received *nothing* in response to her notice of intent, this is not entirely accurate.  A letter was issued in direct response to the notice of intent that stated that Dr. Selznick's could not be liable because he "did not provide care to Mr. Jones."  Even assuming arguendo that the response may not have met all of the statutory requirements under MCL 600.2912b(7)(a)-(d), it was nonetheless a communication received in response to the notice of intent.

The affidavit of merit was signed by a doctor who does not have the same general board certification as Doctor Selznick, which is contrary to statute. The affidavit of merit regarding the licensed practical nurse was signed by a registered nurse and is also inappropriate. Therefore, based upon the defective affidavits of merit, the motion is granted.

I'm gonna decline to accept [defendants'] oral amendment to include [MCR 2.116(C)(7)] on this matter, so *I'm not gonna grant you a final judgment.*[7] *[Plaintiff's counsel] says he has further plans and I'm gonna allow him to pursue those.*

\* \* \*

*[Plaintiff's Counsel]*: So, I mean, do we – can we still amend then, do we still –

*THE COURT*: You're the lawyer.

*[Plaintiff's Counsel]*: Okay.

*THE COURT*: Okay.

*[Plaintiff's Counsel]*: All right.

*THE COURT*: You know. *I'm not gonna tell you what you should or shouldn't do and I don't know the merits of what you have planned, but I've left it open for you to do so.* [Emphasis added.]

Even after the trial court left the door "open" for plaintiff to take further action, no motion to amend was ever filed with the court. All the record shows is that plaintiff moved for reconsideration and after that motion was denied, she eventually filed a new complaint (presumably with the proper affidavits attached). With the trial court never precluding plaintiff from seeking an amendment to the affidavits in the original action, I perceive no error for this Court to correct.

Moreover, I openly question whether plaintiff's current desire to *substitute* the prior affidavits of merit with entirely new ones signed by different affiants qualifies as *amending* the prior affidavits. "Amendment" is defined in relevant part as "a change made by correction, addition, or deletion." *Random House Webster's College Dictionary* (2d ed). Here, there are no "changes" being made to the prior affidavits, let alone any "corrections," "additions," or "deletions." Instead, plaintiff's goal is to entirely replace the prior affidavits with new ones

---

[7] While the court intended to not issue a "final judgment," this is precisely what it did when it dismissed all the claims. MCR 7.202(6)(a)(*i*). It appears that the trial court really was attempting to dismiss the claims without prejudice.

signed by new affiants. On the other hand, if an "amended" affidavit was signed by the same affiant with only changes to what the affiant was averring, then it would properly be considered an "amendment." Thus, even if plaintiff had moved to amend, I do not believe that this type of wholesale substitution would qualify as an "amendment" under the applicable court rules.

## IV. CONCLUSION

Accordingly, I agree that the trial court erred in dismissing the nursing malpractice claim, but I would affirm the trial court's dismissal related to the physician malpractice claim because plaintiff's attorney did not possess a reasonable belief with respect to Dr. Compton's affidavit.


/s/ Pat M. Donofrio