# STATE OF MICHIGAN

# COURT OF APPEALS

GREAT LAKES EYE INSTITUTE, P.C.,

      Plaintiff/Counter defendant-
      Appellee,

v

DAVID B. KREBS, M.D.,

      Defendant/Counter plaintiff-
      Appellant,

and

ENVISION EYE CARE, P.L.L.C.,

      Defendant/Counter-Plaintiff.

UNPUBLISHED
April 16, 2015

No. 320086
Saginaw Circuit Court
LC No. 08-002481-CK

Before: O'CONNELL, P.J., and FORT HOOD and GADOLA, JJ.

PER CURIAM.

This case involves a dispute over the enforcement of a purported restrictive covenant between David B. Krebs, M.D., and Great Lakes Eye Institute, P.C. (GLEI), an ophthalmology practice, after Krebs terminated his employment with GLEI in 2008 to establish his own ophthalmology practice, Envision Eye Care, P.L.L.C.[1] Krebs appeals as of right from the trial court's order awarding GLEI $511,517 in liquidated damages and $150,400 in attorney fees and costs. On appeal, Krebs challenges the trial court's order granting summary disposition in favor of GLEI and denying his motion for summary disposition. We reverse and remand for entry of an order granting summary disposition in favor of Krebs.

## I. BACKGROUND

In 1999, Krebs moved to Michigan to begin employment with a separate corporate entity, Great Lakes Eye, P.C. (GLE), which was dissolved in 2003. On June 24, 1999, Krebs and GLE executed a written employment contract, which included a restrictive covenant that granted Krebs the option of either not practicing ophthalmology in a given region for two years after the

---

[1] Below, the parties stipulated to the dismissal of Envision Eye Care, P.L.L.C. (EEC) as a party.

-1-

termination of his employment or paying GLE the greater of 40% of the gross receipts attributable to Krebs in his last year of employment with GLE or $200,000. The employment contract stated that the term under the contract "shall [commence] from the 14th day of July, 1999 and continu[e] until July 13, 2000." The employment contract also included a clause entitled "**Prohibition Against Assignment**," which stated the following:

> [GLE] shall not assign this Agreement other than to P.C., limited liability company or partnership, or general partnership in which Farhad Shokoohi is the controlling shareholder, member or partner, respectively. Any assignment in violation of the foregoing shall relieve Employee of all obligations and liability hereunder.

On December 31, 1999, GLE assigned all of its assets to its only shareholder, Dr. Farhad K. Shokoohi. Shokoohi subsequently executed a separate assignment transferring a list of assets received under the GLE assignment to the shareholders of Shokoohi Eye Center, P.C. In 2001, Shokoohi Eye Center, P.C. changed its name to Great Lakes Eye Institute, P.C., the appellee in this case.[2] Krebs worked for GLEI until 2008 when he terminated his employment and opened his own ophthalmology practice. Before ending his employment with GLEI, Krebs sent letters to approximately 965 of his patients announcing the opening of his new practice. On August 28, 2008, GLEI filed the instant action, complaining, among other things, that Krebs breached the restrictive covenant of his employment contract by opening his own ophthalmology practice less than a month after terminating his employment with GLEI.[3] On September 18, 2008, Krebs and EEC filed a counterclaim, asserting that GLEI was improperly attempting to restrain competition in violation of the Michigan Antitrust Reform Act, MCL 445.771 *et seq.*, because the parties did not have an enforceable non-compete agreement.

On June 6, 2011, Krebs filed a motion for summary disposition under MCR 2.116(C)(10). Krebs argued that his employment contract expired in 2000, and if the contract was still in effect, the trial court should allow him to amend his counterclaim to assert breach of contract claims against GLEI. On June 14, 2011, GLEI also filed a motion for summary disposition under MCR 2.116(C)(10), asserting that defendant's employment contract was properly assigned from GLE to GLEI, and that the restrictive covenant remained in effect despite the expiration of the initial term outlined in the contract. Following a hearing on the motions, the trial court granted GLEI's motion and denied Krebs's motion. The court concluded that the employment contract was permissibly assigned to GLEI in 1999, and that the restrictive covenant remained in full effect despite the initial term of the contract expiring in 2000. GLEI then filed a motion for entry of judgment, requesting that the trial court award GLEI $515,779.44 in liquidated damages and $161,779.64 in attorney fees and costs.[4] The trial court ultimately

---

[2] It is unclear from the record at what specific point in time Krebs officially stopped working for GLE and began working for Shokoohi Eye Center, P.C./GLEI.

[3] On March 3, 2011, the trial court entered a stipulated order dismissing without prejudice the other claims set forth in GLEI's complaint.

[4] The liquidated damages amount was based on a "Compensation Report" provided by GLEI. Over Krebs's objection, the trial court concluded that this report was admissible under MRE 803(6) as a business record, and that the report "would not lead to an inaccurate result."

entered a judgment in favor of GLEI, awarding $511,517 in liquidated damages and $150,400 in attorney fees and costs.

On appeal, Krebs argues that the trial court erred in granting GLEI's motion for summary disposition and in denying his motion for summary disposition. Krebs further contends that the trial court's award of damages was erroneous and that the trial court abused its discretion in denying his motion to amend his counterclaim.

## II. APPLICABLE LEGAL PRINCIPLES
## A. STANDARD OF REVIEW

As questions of law, we review de novo a trial court's decision on a party's motion for summary disposition and a trial court's interpretation of a contract. *Coates v Bastian Bros, Inc*, 276 Mich App 498, 502-503; 741 NW2d 539 (2007).

## B. SUMMARY DISPOSITION

A motion for summary disposition under MCR 2.116(C)(10) is properly granted when "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A motion under MCR 2.116(C)(10) tests the factual sufficiency of a complaint. *St Clair Med, PC v Borgiel*, 270 Mich App 260, 263-264; 715 NW2d 914 (2006). "The moving party must specifically identify the matters that it believes have no disputed factual issues" and must "support its position with affidavits, depositions, admissions, or other documentary evidence." *Id*. at 264. When reviewing a motion for summary disposition, we consider the evidence presented in a light most favorable to the nonmoving party to determine whether the record leaves open an issue on which reasonable minds could differ. *Coates*, 276 Mich App at 502-503.

## C. CONTRACT INTERPRETATION

When interpreting a contract, if the contractual language is unambiguous, we interpret the contract's terms according to their plain and ordinary meaning and construe and enforce the language as written. *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 375; 666 NW2d 251 (2003). In assigning contractual terms their plain and ordinary meaning, use of a dictionary is appropriate. *Vushaj v Farm Bureau Gen Ins Co*, 284 Mich App 513, 515; 773 NW2d 758 (2009). Whether a contractual provision is ambiguous is a question of law, and only when a contract is ambiguous does its meaning become a question of fact. *Coates*, 276 Mich App at 504. "[I]f reasonable minds could disagree about the conclusions to be drawn from the facts, a question for the factfinder exists." *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999).

## III. DISCUSSION

Krebs first argues that the trial court erred in granting GLEI's motion for summary disposition because he was relieved of all liability under the 1999 employment contract when GLE assigned its assets to Shokoohi. The employment contract upon which defendant relies stated that GLE "shall not assign this Agreement other than to P.C., limited liability company or partnership, or general partnership." The contract further stated that "[a]ny assignment in violation of the foregoing shall relieve Employee of all obligations and liability hereunder." On

December 31, 1999, GLE executed a "**BLANKET ASSIGNMENT**" that "assign[ed], transfer[red], and set[] over" all of its "right, title and interest" in its assets to the shareholders of GLE. At the time, the only shareholder of GLE was Shokoohi. Shokoohi then executed a separate "**BLANKET ASSIGNMENT**" in which he assigned, transferred, and set over all of the right, title, and interest in a list of assets to the shareholders of GLEI.[5]

To begin, Krebs's employment contract was arguably not included in GLE's 1999 asset assignment to Shokoohi. The assignment from GLE to Shokoohi transferred all "right, title and interest" to "any and all assets" of GLE. The parties did not identify GLE's existing employment contracts as "assets" under the agreement. *Merriam-Webster's Collegiate Dictionary* (11th ed) defines "asset" as "the entire property of a person, association, corporation, or estate applicable or subject to the payment of debts," and "the items on a balance sheet showing the book value of property owned." Krebs's employment contract did not have an identifiable monetary value and could not be applied to the payment of debts. Therefore, GLEI has not shown that the employment contract was included in the assets transferred by GLE to Shokoohi, and later by Shokoohi to GLEI. If Krebs's employment contract was never assigned to GLEI, GLEI has no standing to assert a breach of contract claim against Krebs under the 1999 contract Krebs entered with GLE.[6]

Moreover, even if GLE assigned the employment contract to Shokoohi in 1999, the assignment was expressly prohibited by the employment contract. Shokoohi, as the individual shareholder of GLE at the time of the 1999 assignment, was not a "P.C., limited liability company or partnership, or general partnership." The employment contract provided that an unauthorized assignment by GLE relieved Krebs of all liability and obligations under the contract. Accordingly, even if GLE assigned the employment contract to Shokoohi in 1999, the unauthorized assignment relieved Krebs of all obligations arising under the contract, including obligations related to the restrictive covenant.

On appeal, GLEI argues that the distinction between Shokoohi as an individual and a "P.C., limited liability company or partnership, or general partnership" in which Shokoohi is the primary shareholder is arbitrary. Relying on this argument, the lower court concluded the following:

> The court finds that GLE's blanket assignment of assets to Dr. Shokoohi is in compliance with the party's intent under the contract. The contract prohibits assignment unless assigned to a P.C., limited liability company, partnership or general partnership in which Dr. Shokoohi is the primary shareholder. This provision was intended to prohibit the transfer of assets to a party other than Dr. Shokoohi. Therefore, even though the assets were transferred to Dr. Shokoohi as an individual before they were transferred to GLEI, the transfer was still in

---

[5] Krebs and his employment contract are not mentioned in either document.

[6] Under Michigan law, "[t]o have standing, a party must have a legally protected interest that is in jeopardy of being adversely affected." *Barclae v Zarb*, 300 Mich App 455, 483; 834 NW2d 100 (2013) (internal quotation marks and citation omitted). A plaintiff cannot rest a claim for relief on the interests and legal rights of third parties. *Id.*

compliance with the party's intent and thus, it did not void the obligations under the contract by either party.

The trial court's reasoning is erroneous. The employment contract unambiguously listed the entities that GLE was permitted to assign its contractual rights to, and Shokoohi was not among them. When the language of a contract is unambiguous, the only measure of the parties' intent is the language itself. See *Quality Prod*, 469 Mich at 375. Because the language used in the employment contract was clear and unambiguous, if GLE's assignment of assets to Shokoohi included its rights under Krebs's employment contract, Krebs was relieved of all liability under the contract because such an assignment was expressly prohibited.

GLEI also contends that the restrictive covenant should be enforced because Krebs was not prejudiced by GLE's assignment to Shokoohi. GLEI claims that in *Hunters Pointe Partners Ltd Partnership v US Fidelity & Guar Co*, 177 Mich App 745; 442 NW2d 778 (1989), "this Court held that an assignment that was not expressly consistent with the language of the contract at issue still was valid because (1) there was no explicit prohibition against such assignment and (2) the defendant was not prejudiced by the assignment." This is not an accurate summary of the Court's holding. In *Hunters Pointe*, this Court concluded that the defendant, a surety company who was not a party to the contract and was "in no way prejudice[d]" by the assignment, was not entitled to summary disposition solely on the ground that a contracting party impermissibly assigned its contractual rights. *Id.* at 750. In this case, Krebs was a party to the employment contract at issue, and the employment contract expressly prohibited an assignment to an individual. Accordingly, GLEI's argument is without merit.

## IV. CONCLUSION

The trial court erred in granting GLEI's motion for summary disposition because GLE did not assign Krebs's employment contract to GLEI. Further, even if the employment contract was assigned to GLEI, under the express language of the contract, the initial unauthorized assignment to Shokoohi relieved defendant of all liability and obligations arising under the contract. In light of this conclusion, we need not reach defendant's remaining arguments on appeal that the trial court's award of damages to GLEI was erroneous and that the trial court abused its discretion by denying Krebs's request to amend his counterclaim.

We reverse the trial court's order granting GLEI's motion for summary disposition and remand for entry of an order granting summary disposition in favor of Krebs. We do not retain jurisdiction.

/s/ Peter D. O'Connell
/s/ Karen M. Fort Hood
/s/ Michael F. Gadola